14918

STATE v. GREGORY

(4 S. E. (2d), 1)

214

November, 1938.

*Messrs. Donald Russell, L. G. Southard* and *Eugene S. Blease,* for appellant,

*Messrs. Samuel R. Watt, Solicitor* and *Evans, Galbraith & Holcomb,* for the State,

July 17, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Prior to the argument of this case, there were two motions made in the cause. (1) A motion by appellant for an order suspending the hearing and determination of the appeal and for permission to move before the Circuit Court for a new trial on the ground that highly improper and prejudicial evidence and exhibits which were not offered in evidence in the trial of the cause came into the possession of the jury which convicted appellant, and such evidence and exhibits were considered by the jury when the cause was tried; and (2) a motion by respondent to dismiss the appeal for the alleged failure of appellant to comply with Section 6 of Rule 4 in the preparation of his exceptions.

Our disposition of this appeal renders it unnecessary that we pass upon the first motion.

The exceptions are long, argumentative and repetitious, yet the appeal is of such grave consequence to appellant, we will in this instance waive a strict compliance with the rule. It may be that some of the exceptions do not directly transgress the rule.

The appellant was convicted of embezzlement, and from the sentence imposed has appealed upon seventy-three exceptions. By reason of the number and the prolixity of the exceptions, to which we have hereinbefore referred, it has not been an easy task to separate the wheat from the chaff. However, upon a careful analysis of the case, we find that a majority of these exceptions made in every conceivable form

are to the admission in evidence of a "by-pass," and testimony relating to the "by-pass," permitted by the trial Judge over the strenuous objection of appellant; and the only other issue necessary to pass upon is whether appellant's motion for a directed verdict of "not guilty" should have been granted.

The appellant, who was (or had been) the duly appointed, acting and qualified secretary and treasurer of the commissioners of the Public Works of the City of Spartanburg, S. C., and another who was (or had been) the duly appointed, acting and qualified assistant secretary and treasurer of said commissioners of the Public Works of the City of Spartanburg, S. C., were charged in the same indictment with the willful, unlawful and felonious embezzlement of the sum of Five Thousand Five Hundred Thirty-four and 42/100 ($5,534.42) Dollars of the public funds of the commissioners of public works of the City of Spartanburg, S. C., and appropriating said public funds to their own use and purpose with the intention of cheating and defrauding the said commissioners, etc., of the same.

Upon a trial of the case, respondent was content to introduce evidence as to only a portion of the amount charged to have been embezzled, such portion being represented by checks and vouchers which it was claimed had been issued during the years 1936 and 1937 to the public works in payment of bills, but the proceeds thereof being appropriated by appellant and his co-defendant.

Respondent was allowed to introduce in evidence a contrivance called a "by-pass," which had been removed from the premises of appellant, and which it was claimed had been installed at the direction or with the knowledge and consent of appellant in 1932, and had been in continuous use since said date until removed, which was through the time of the alleged embezzlement. The "by-pass" was a contrivance placed underground at and around the water meter in appellant's yard and permitted about three-fourths of the water which would ordinarily pass through and register on the

meter to pass around, thus reducing the appellant's bill for water consumption to about one-fourth. Timely objection was made to all testimony having any reference whatsoever to this "by-pass."

Subsection (4) of Section 1203 of the Criminal Code, Code 1932, is as follows: " * * * Any such person to whom such water is furnished from or by means of a meter, who shall willfully and with intention to cheat and defraud any of said municipalities or the commissioners of public works alter or interfere with such meter, or by any contrivance whatsoever withdraw or take off water, in any manner except through such meter, shall be guilty of a misdemeanor and be punished as hereinafter provided."

The penalty for a violation of the above statute is a fine not exceeding $200.00 or by imprisonment not exceeding sixty days, or by both fine and imprisonment.

It will be seen that while in order for the installation and use of a contrivance for diverting water from the meter to be unlawful, such contrivance must be installed and used with intent to cheat and defraud, yet the statute merely denominates its violation a misdemeanor; and the procurement of water without paying therefor by the use of such a device is not larceny under the law of this State. Except for this statute, we would say that it was common law larceny; and under the common law, larceny is a felony.

Embezzlement is purely a statutory offense, and was unknown to the common law. As is stated in 18 Am. Jur., Embezzlement, Section 2: "The object of statutes creating the offense is to meet and obviate certain defects in the law of larceny through which many persons who misappropriated another's property escaped criminal prosecution although the moral turpitude of their offense was as great as in the case of larceny proper. One of the principal objects of embezzlement statutes is to protect employers against the frauds of those in whom confidence is imposed."

While no single definition of embezzlement is broad enough to cover the offense, yet, generally speaking, embezzlement may be defined as the fraudulent appropriation or conversion by an agent, an employee, a corporate officer, or other person acting in a fiduciary capacity or character, of money or property, the possession of which has been intrusted to him by another. 18 Am. Jur., Embezzlement, Section 2. See also *State v. Brown,* 178 S. C., *294, 299, 182* S. E., 838.

Our statute on embezzlement (Section 1510, Code of 1932, as amended in 1934, Act February 5, 1934, 38 St. at Large, page 1197), reads as follows: "All officers and other persons charged with the safe keeping, transfer and disbursements of any public funds, who shall embezzle the same, shall be deemed guilty of felony, and, upon conviction thereof, shall be punished by fine and imprisonment, in the discretion of the court; said fine and imprisonment to be proportioned to the amount of the embezzlement   *   *   *. In trials under this Section, upon production of evidence tending to prove that any such officer or other person has received public funds and failed to account therefor as required by law, there shall arise a presumption that the funds received and unaccounted for have been fraudulently appropriated by such officer or person, and the burden at such stage of the case shall rest upon such officer or person to show otherwise."

In permitting the introduction in evidence of the "bypass," and testimony relating to same, the trial Judge expressed grave doubt if such was admissible, stating: "I understand the ease in which the Court can fall into error. I don't want to run into error." And after further argument, "I will let it in, and take a chance."

The testimony and "exhibit" were admitted for the purpose of showing "intent."

There is no dispute between respondent and appellant that as a general proposition, in a prosecution for one crime proof of another direct substantive crime is never admissible, unless there is some legal connection between the two, upon which it can be said that one tends to establish the other or some essential fact in issue.

However, it is contended by the respondent that this testimony and the "exhibit" come within the. exceptions to the general rule. These exceptions are set out in the opinion in *State v. Lyle,* 125 S. C., 406, 416, 118 S. E., 803, 807, in quoting from *People v. Molineux,* 168 N. Y., 264, 61 N. E., 286, 62 L. R. A., 193, in the following language: " 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish, (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial. Wharton on Crim. Ev. (9th Ed.) 48: Underhill on Ev. § 58; Abbott's Trial Brief, Crim. Trials, sec. 598.' "

In the paragraph immediately preceding the above-quoted statement of exceptions to the general rule, is the following: " * * * That contention is grounded upon the familiar and salutary general rule, universally recognized and firmly established in all English-speaking countries, that evidence of other distinct crimes committed by the accused may not be adduced merely to raise an inference or to corroborate the prosecution's theory of the defendant's guilt of the particular crime charged. Bishop, New Crim. Proc., 1120. *State v. Owen,* [124 S. C. 220], 117 S. E. [536], 537; *People v. Molineux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193. The objections, from the viewpoint of English jurisprudence, to the admission of this class of evidence are patent. Proof that a defendant has been guilty of another

crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence. It 'compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the one immediately before it.' *Com. v. Jackson,* 132 Mass. 16; 44 Am. Rep., 299 note; 8 R. C. L., 198, § 194. To this general rule, however, there are certain well-established exceptions which are thus tersely stated by Justice Werner in *People v. Molineux, supra.* \* \* \* "

The paragraph immediately following the "exceptions" is as follows : "Whether evidence of other distinct crimes properly falls within any of the recognized exceptions noted is often a difficult matter to determine. The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. *But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the Courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected.* Underhill, Criminal Evidence, § 88; *People v. Molineux, supra.*" (Italics added.)

One of the most complete and comprehensive annotations on the general subject under discussion will be found in 62 L. R. A., under the reported case of *People v. Molineux, supra,* which case is cited with approval by the appellate Courts of quite a number of the states of the Union.

It is not necessary that this opinion become a disertation. Using the hereinabove-quoted portions from the opinions in the *Lyle case* as a yardstick, and giving the defendant-appellant "the benefit of the doubt," we will undertake to briefly demonstrate that the admission of this testimony was error. And the argument of the learned solicitor to the jury, which was taken stenographically, and appears in the Transcript of Record, is most convincing that such error was highly prejudicial to appellant.

In the case at bar, it is the theory of respondent that evidence of the commission by appellant of a misdemeanor is evidence that appellant intended to commit a felony. If appellant were being prosecuted for installing and maintaining a contrivance to take off water other than through the meter in his yard, it would be necessary for the State to prove that he did so with intent to cheat and defraud the commissioners of public works, and of course under the testimony adduced, the intention to cheat and defraud could only be inferred from the facts and circumstances of the case. So that we have here evidence of the commission of another and separate offense unrelated to the offense with which appellant is charged, and in which the intent has to be gathered from the facts and surrounding circumstances, being offered to prove the intent of appellant in the alleged commission of the offense of embezzlement—a presumption bottomed upon a presumption. But even conceding that evidence that appellant had defrauded the commissioners out of water would be some evidence that appellant's intent when he appropriated money belonging to the commissioners was fraudulent (granting that he did appropriate such money), yet it is not appellant's defense that he didn't intend to cheat and

defraud the commissioners. His defense is that he didn't take the money; that he hasn't appropriated one cent. This being so, "the inevitable tendency of such evidence is (was) to raise a legally spurious presumption of guilt in the minds of the jurors."

The trial Court did not, and this Court "does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy."

Again, in trying a person charged with one offense, and evidence of the commission of another offense comes within one of the "exceptions," the better rule is that such evidence is yet inadmissible unless it "may be considered reasonably necessary in the light of all the facts of the particular case to accomplish the purpose for which it is offered." *State v. Lyle, supra.*

When respondent produced evidence tending to prove that appellant had received public funds and had failed to account therefor, the statute created a presumption that the funds received and unaccounted for had been fraudulently appropriated, and this presumption when considered with the other testimony relevant to the crime charged made it unnecessary to admit evidence of another crime. it is true that the trial Judge did not charge the jury the statutory presumption, but by not so doing, otherwise inadmissible testimony could not be thus rendered competent and admissible. The exceptions relating to this evidence are sustained.

The indictment in this case charges an embezzlement of Five Thousand Five Hundred Thirty-four and 42/100 ($5,534.42) Dollars by appellant and his co-defendant, T. V. Kimbrell.

At the close of respondent's testimony, and again at the conclusion of all testimony, appellant made a motion for a directed verdict of "not guilty" on the ground that there was no, or insufficient proof to justify the submission of the case

to the jury as against both jointly, it being the position of appellant that there was a complete lack of evidence that the defendants were acting in concert or at the instance of each other, and that if one embezzled any money, that one was alone responsible; that under the indictment, and the statute under which the defendants were prosecuted, even though appellant had embezzled some amount of money, in the absence of proof that his co-defendant was acting in concert with him, appellant would be entitled to a directed verdict of "not guilty" under the indictment as drawn.

The trial Judge refused the motion and in charging the jury refused to charge appellant's request No. 3, which embodies the principle of law contended for by appellant in his motion for a directed verdict: "No. 3. Under this indictment, you cannot find one defendant guilty and the other not guilty. The State must establish that the two together took and embezzled the same money and appropriated it to their joint use and show this beyond a reasonable doubt before you can write a verdict of guilty." And charged: "Now, Gentlemen, in case you find one or both of the defendants guilty; and I charge you that you may find both of them guilty. You may find one of them guilty, and the other not guilty, or you may find both of them 'not guilty.' If you find one or both of them guilty, our Supreme Court has laid down the rule that in a case charging embezzlement, a jury, if it finds a defendant guilty of the crime of embezzlement, the jury must also state in the verdict the amount of the embezzlement in dollars and cents. And if you find one or both of the defendants 'guilty,' I charge you that you may find both of the defendants guilty of the same amount. You may find one of them guilty of one amount, and the other guilty of a different amount; and as I told you a moment ago, you may find them both 'not guilty' of anything. You may find one 'guilty' and the other 'not guilty.' Either one you may find guilty and the other not guilty, or both of them guilty, or both of them not guilty. If you find one of

them guilty or both, the Supreme Court has laid down the rule that you must also find in your verdict how much the embezzlement amounted to.  * '  *  * ."

The appellant relies in the main on the case of *State v. James Nichols and John Nichols*, 12 Rich., 672. In the cited case the indictment charged the defendants with unlawfully marking six hogs, the property of one, J. H. Beck. The proof was that one of the defendants marked one hog, which he claimed, and two other hogs were claimed and marked by the other defendant at another time. The verdict was guilty.

The statute under which the defendants were prosecuted, reads : "If any person or persons shall be lawfully convicted of willfully and knowingly marking, branding, or disfiguring any sheep, goat, or hog, of or belonging to any other person, the said offender or offenders shall for each and every sheep, goat, or hog, of which he, she, or they shall or may be convicted of branding or disfiguring as aforesaid, shall be subject to the penalty of five pounds." Act of 1789, 5 St. at Large, page 139, § 5.

The defendants appealed and moved for *a new trial* on the grounds :

"1. Because the verdict does not find the number of hogs marked, and as the punishment is fixed by statute for each hog so marked, no sentence can be pronounced by the Court on the conviction.

"2. Because the indictment charged the marking of six hogs, the property of the prosecutor, and no proof whatever was. offered as to the marking of more than three hogs.

"3. Because the indictment charged the defendants jointly with unlawfully marking the prosecutor's hogs, and the proof was that one of the hogs had been marked by James Nichols, and the other two by John Nichols, and this marking was the individual act of the defendants respectively— neither having any knowledge or agency in the act of the other."

In passing upon these exceptions, the Court stated:

"The verdict of guilty cannot stand. For it seems that one of the defendants claimed one of the hogs, and marked it; the other two were claimed by another of the defendants and marked by him; but there was no joint act proved, nor any concurrence in the separate acts. Of course a joint conviction cannot be supported.

"To justify a sentence in such a case, the verdict must ascertain the number of hogs marked. For until that is done the fine for each hog marked cannot be imposed. * * * But it was necessary to find how many hogs were unlawfully marked; unless that be done, the sentence of five pounds for each hog marked cannot be passed. * * * ."

The *Nichols case* is not authority for the contention of appellant that there must be proof that his co-defendant was acting in concert with him at the time he embezzled some portion of the amount with which he is charged with having fraudulently appropriated—which sum must be definitely determined—and that unless the proof showed that his co-defendant was jointly involved in the misappropriation thereof or a concurrence in the separate acts, he was entitled to a directed verdict of "not guilty." The cited case did not hold that a verdict of "not guilty" should have been directed. It held that the defendants could not be sentenced for marking *six* hogs; nor of marking *three* hogs, in that there was no joint act proved, nor any concurrence in the separate acts, and that therefore a joint conviction could not be supported. If upon a new trial, separate verdicts could not have been rendered, then it would have been a useless gesture to have remanded the case for a *new trial*.

There is a similiarty between the *Nichols case* and the one at bar. In both cases there were two defendants charged jointly with a crime. The statutes under which the defendants were indicted required the jury to find a special verdict —in the *Nichols case,* the number of hogs marked, in the instant case, the approximate amount embezzled. The proof

in the *Nichols case* showed positively that there had been separate acts with no concurrence in the separate acts. The testimony in the case at bar tends to prove separate acts, and possibly with the exception of an item of $330.66 representing the proceeds of a check issued by the County Board of Spartanburg County, no evidence of joint or concurring act or circumstance from which it could be reasonably inferred that the defendants jointly participated. In the *Nichols case,* a general verdict of guilty was rendered. In the instant case both defendants were found guilty, and of the embezzlement of the total of .all items introduced in evidence.

Under the testimony this appellant would not be entitled to even a new trial if the granting of a new trial depended solely upon the holding of the Court in the *Nichols case.*

Time is not an element of the offense of embezzlement as we have no statute of limitation as to the offense. The State had the right, under our view of the indictment, to prove the offense, generally alleged, at any time prior to the finding of the indictment by the Grand Jury; and the very fact that the statute compels the jury to find the amount embezzled, is indicative that it was the intention of the Legislature that separate acts of embezzlement on different occasions could and would be united in one indictment.

In *State v. Wade,* 95 S. C., 387, 79 S. E., 106, 107 (a fornication case), it is stated: "The Court erred also in charging that, under the indictment, one of the defendants could not be acquitted and the other convicted. *If that ruling was based upon the reasoning that, because the indictment charged the defendants jointly, only a joint verdict could be found, it was erroneous, because, while the indictment was joint in form, in legal effect, it was joint and several."* (Italics added.) See also *State v. Francis et al.,* 152 S. C., 17, 23, 149 S. E., 348, 70 A. L. R., 1133.

The same principle is involved where on the civil side of the Court two or more defendants are sued in tort and it is alleged that through the joint and concurrent delicts of all the defendants the plaintiff has suffered injury. This Court has held that a verdict against only one of the defendants may be sustained. See *Boyd v. Maxwell Bros. & Quinn et al.,* 190 S. C., 103, 2 S. E. (2d), 395, and cases therein cited.

The exceptions to the refusal of the trial Judge to direct a verdict of "not guilty" are overruled.

Having sustained 'appellant's exceptions to the admission in evidence of the "by-pass" and testimony thereabout, the judgment is reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

MR. JUSTICE CARTER did not participate on account of illness.