19386

The STATE, Respondent, v. George SINGLETON and
Ernest Charles Jones, Appellants

(187 S. E. (2d) 518)

*Messrs. Matthew J. Perry,* of *Jenkins, Perry & Pride,* Columbia, *Franklin R. DeWitt,* of Conway, and *Earnest A. Finney, Jr.,* of Sumter, *for Appellants.*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Emmet H. Clair, Asst. Atty. Gen.,* of Columbia, and *J. M. Long, Jr., Sol.,* of Conway, *for Respondent*

March 9, 1972.

Moss, Chief Justice:

George Singleton and Ernest Charles Jones, the appellants herein, were arrested on April 4, 1970 and charged with the offense of rape. Thereafter, at the 1971 March Term of the Court of General Sessions for Horry County, they were brought to trial and convicted, with a recommendation to mercy. Each of the appellants was sentenced pursuant to Section 16-72, of the Code.

At appropriate stages of the trial, the appellants made motions for a directed verdict on the ground that the State had failed to establish that they committed the offense of

rape as charged in the indictment. The appellants, following the verdict, renewed their motion for a directed verdict or in the alternative for a new trial, upon grounds which will be hereinafter discussed. These motions were refused and this appeal followed.

It appears from the record that on Friday, April 3, 1970, at about 10:30 P.M., the prosecutrix, a nurse, reported for duty on the night shift at Ocean View Memorial Hospital in Myrtle Beach, South Carolina. Approximately one hour later, she was called home to attend her sick child. Thereafter, between 1:00 and 1:30 A.M. o'clock, April 4, 1970, she returned to Ocean View Memorial Hospital to go back to work. When she stopped her car in a parking area outside the rear entrance of the hospital, she noticed that a car had pulled in behind her and she sat in her car for a minute before stopping her engine. The other car proceeded to a point about four parking spaces beyond her car and stopped. She noticed that there were two men in the other car, one of whom got out of the car and walked towards the rear door of the hospital. She then got out of her car to go in the hospital, but was stopped by the man whom she thought had gone into the hospital. He grabbed her by the arm and told her to come with him, and he put a pistol to her back. The other man who had gotten out of the car, came to where she was and grabbed her by the other arm. She was then taken to the car where she sat between the two men. As they drove from the hospital lot, one of the men kept pointing a gun at her. The car was driven some distance to a clearing in the woods where they stopped. The prosecutrix was required to disrobe and both men forcibly raped her twice. After about two hours she was permitted to dress and was driven back to the hospital where she reported the incident to other nurses, a policeman and a physician who examined her.

The appellants were arrested, without a warrant, in Myrtle Beach during the early evening of April 4, 1970, by Lt. G.

W. Thompkins of the police department of that city and placed in the city jail.

The first question for determination is whether there was sufficient probable cause to justify the arrest of the appellants. It is their contention that the court erred in refusing to hold that they were unlawfully arrested and all articles seized or obtained from them were inadmissible as evidence.

> We have held that it is the function of the court to determine from the evidence whether a warrantless arrest was supported by probable cause. *State v. Hamilton,* 251 S. C. 1, 159 S. E. (2d) 607.

In the Hamilton case we quoted with appproval the following:

"The applicable federal doctrine sanctions a warrantless search and seizure incident to a lawful arrest. *Draper v. United States,* 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed. (2d) 327. The point that the exhibits were the fruits of an unlawful search and seizure is bottomed upon the claim that the appellant's arrest without a warrant was illegal. The following quotation from *Beck v. State of Ohio,* 379 U. S. 89, 85 S. Ct. 223, 13 L. Ed. (2d) 142, is applicable and states the test which must be applied in resolving this issue:

" 'The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed * * * an offense'."

The evidence shows that during the prosecutrix's interview with the police she gave the officer a description of her assailants, the automobile used and of various articles that she observed within the automobile. Immediately following

this, the officer put out an "all points bulletin". Thereafter, he went to the scene of the alleged crime and there found tennis shoe tracks and automobile tire tracks in the soil.

It appears that officer Thompkins of the Myrtle Beach Police Department came on duty at 6:00 P.M. on April 4, 1970, and was given the information that the prosecutrix had been raped and, as a result of what he was told, he was on the look-out for an old blue four-door car which would have a tape deck in the front center of the dash and a box in the right front floorboard. He was also alerted that there would be a pair of brown buckle type shoes in the car and two suspects. They were described as: (1) colored male, approximately 5' 8" in height, 20-27 years of age, small and thin build; and (2) colored male, larger and huskier than number one and maybe older, and they were wearing tennis shoes. This officer testified that after receiving this information he saw a blue four-door car with four colored occupants parked on a street in the city of Myrtle Beach. The officer observed the car and approached it. The driver got out and he saw that he was a colored male, slim in build. The driver went into a restaurant and came out. The other colored male, larger and heavier, appearing to be the same age, got out of the back seat. Both men were wearing tennis shoes. The car drove off and the officer followed it down the street from where he had first seen it. When he went up to the car, he observed that a tape player was in the center of the dash and a box on the right front floorboard. He also observed a pair of brown shoes on the right rear floorboard. The appellant Jones and the car were taken to the police station and, thereafter, the other appellant was arrested.

The trial judge found as a fact, based on the foregoing testimony, that the officer had sufficient probable cause to arrest the appellants and held that the arrest was lawful. We think the evidence supported the ruling of the trial judge. The arresting officer had reliable information that a felony had been committed and with a description of the automobile and its contents and of the

suspects, he was justified in concluding that the appellants were the ones who had committed the crime.

After the appellants had been lawfully arrested and lodged in the city jail, a search warrant was obtained and served upon the appellant Jones who was driving the automobile in question at the time of his arrest. The officers, under the authority of the aforesaid warrant, searched the automobile in question, obtaining therefrom a box, a pistol, a ball-point pen containing red ink, a pair of surgical scissors and some clothes in a plastic bag. They also obtained the tennis shoes worn by the appellants and four tires from the automobile. There was no warrantless search of the automobile. The appellants do not challenge the validity of the search warrant.

It is our conclusion that there was probable cause for the arrest of the appellants without a warrant. The various articles taken from the automobile and the appellants were not illegally obtained.

The appellants' next assignment of error is based on the contention that their in-court identification by the prosecutrix was tainted by a pre-trial line-up identification. They argue that the trial judge erred in permitting the prosecutrix to identify them as the persons who raped her.

The prosecutrix testified that she could identify the two men who raped her and when asked if either or both of them were in the courtroom she answered that they were. She was then directed to point them out. The appellants interposed an objection and asked the court to make a determination of the admissibility of this testimony in the absence of the jury. The trial judge then excused the jury and, in the absence thereof, conducted a hearing to determine the admissibility of this evidence.

In the absence of the jury, the prosecutrix testified that she was with the appellants for two hours. She stated that when she was seized at the back entrance to the hospital

and as she was led by the appellants to their car, the lighting was sufficient that she could see and observe their features. The prosecutrix stated that she rode between the two appellants from the hospital to the place where she was raped and she had an opportunity to observe their features during such ride. The prosecutrix further testified that, while at the place where she was raped, at times the car door would be opened and there would be lights and she could see and observe the appellants. She also said that the glove compartment was open and there was light from it. The appellants brought her back to the hospital on a street where there were street lights and where she saw and observed both of them. When let out of the car, one of them walked around the car with her and she saw him very plainly. She also stated "many times" she had the opportunity to see each of them and their features so that she would recognize them later.

Shortly after the appellants were arrested, they were placed in a "line-up" with two other men, at the Myrtle Beach Police Station and viewed by the prosecutrix. She identified the appellants in the line-up as her attackers. At the time of the line-up, the appellants were without counsel. During the hearing, the prosecutrix identified the two appellants as the ones who had raped her. In making the identification of the appellants, she was asked if such was based upon "how they looked at the time that this thing happened or from your opportunity to observe them, or from seeing them in the line-up." In response to the foregoing question, the witness stated that she could not forget the appellants from that night because she spent two hours with them. She testified that she could identify them in the line-up and "also here now."

The presecution chose to proceed on the in-court identification and not the line-up identification. The trial judge found as a fact, beyond a reasonable doubt, that the identification of the appellants by the prosecutrix was not the product of the line-up, but the identification was of an in-

dependent origin based on facts and observations made prior to the line-up.

An accused person is constitutionally guaranteed counsel at an in-custody line-up identification, and when counsel is not present at the line-up, testimony of the witnesses that they identified the accused at the line-up is rendered inadmissible, and any in-court identification is also rendered inadmissible unless the trial judge first determines in a separate hearing, in the absence of the jury, that the in-court identification is of independent origin and is untainted by the illegal line-up. *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. (2d) 1149; *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. (2d) 1178. There is competent evidence in this record to support the findings of the trial judge. The findings of fact being so supported, they are conclusive upon us.

The appellants charge the trial judge with error in refusing to grant a full hearing concerning the circumstances of the line-up. Stated otherwise, the question is whether the trial judge erred in not requiring the State to put up as witnesses the officers who conducted the line-up.

As is heretofore stated, the trial court conducted a hearing out of the presence of the jury to determine whether the in-court identification by the prosecutrix was tainted by a pre-trial line-up identification. The State chose to proceed on the in-court identification and not the line-up identification. One of the counsel for the appellants stated "May I then simply suggest by way of an offer of proof that we would like to examine on this question all of the police officers who participated in the investigation of this case." In response to this request, the trial judge stated that he would give the appellants the opportunity to put up any witness solely on the question of identification. He further gave the counsel permission to put the appellants up as witnesses solely on the question of identification with the limitation that the solicitor would only have the right to cross exam-

ine on this issue. He further ruled that if the appellants testified on the question of identification at this hearing that such would not mitigate against their right not to take the stand, if they so elected, in the trial of the case. If the appellants desired to examine the police officers upon the circumstances of the line-up as it might reflect upon the question of the identification of the appellants by the prosecutrix, full opportunity was given them to call the officers as witnesses. The appellants elected not to call any of the police officers nor did either of them testify concerning the question of their identification by the prosecutrix. We find no error on the part of the trial judge in this connection.

The final question for decision is whether the trial judge erred in refusing to grant the motions of the appellants for a directed verdict of acquittal upon the ground that the State had failed to prove that they had committed the offense of rape.

In deciding whether the court erred in not directing a verdict in favor of the appellants, we must view the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464.

The prosecutrix positively identified the appellants as the ones who raped her. She gave a description of the automobile that the appellants used in carrying her from the hospital to the place where she was raped. She described some of the contents of the car. She testified that she saw inside of the car a tape player, a box on the right front floor of the car, a pair of brown buckle type shoes in the back of the car and some clothes hanging in the back. She also testified

that the appellants were wearing tennis shoes. She said she lost a pen with red ink in it and a pair of surgical scissors. She said that one of the appellants had a small shiny pistol that was pointed at her. When the car in which the appellants were riding was searched, the articles hereinabove described were found in the car. She gave a description of the two men who assaulted her and the actual description of the appellants coincided therewith. There is testimony that a cast of the tire imprints and the tennis shoe tracks found at the scene were made. A Federal Bureau of Investigation agent, who had examined the casts and the tires and the tennis shoes, testified that the cast impressions were made by the set of tires removed from the Jones automobile. He further testified that the cast impressions of one of the tennis shoes was made by the shoes taken from Singleton.

We think that the evidence heretofore recited fully warranted the trial judge in refusing the motions of the appellants for a directed verdict and submitting the case to the jury. The jury's verdict, finding the appellant's guilty, is fully supported by the evidence.

The appellants, here, pleaded not guilty and set up the defense of alibi. The appellants offered some evidence tending to support such plea. The trial judge fully and correctly instructed the jury as to the plea of alibi. It was for the jury to determine whether the appellants were actually present at the scene of the crime and committed it.

The exceptions of the appellants are without merit. The judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.