## 21066

The STATE, Respondent, v. Nathan Joseph JONES and Elizabeth H. Parris, Appellants.

(259 S. E. (2d) 120)

*Dale T. Cobb, Jr.* and *Michael P. O'Connell,* Charleston, for *Appellants.*

*Atty. Gen., Daniel R. McLeod* and *Asst. Atty. Gen., Brian P. Gibbes,* Columbia, and *Sol., Capers G. Barr, III,* Charleston, *for Respondent.*

October 11, 1979.

GREGORY, Justice:

Appellants Nathan Joseph Jones and Elizabeth H. Parris were found guilty of kidnapping, rape, armed robbery and assault and battery with intent to kill. Each was sentenced to a term of life plus seventy-five years. This appeal followed. We affirm.

In the early morning of November 29, 1977, Michelle Rae Squillante was abducted at knife-point by the two assailants, one male and one female. The assailants then drove to a secluded area where they proceeded to alternately assault, batter and sexually abuse the victim, rob her and slash her throat. On that same date appellants were arrested at their home and charged with the offenses.

Appellants filed a total of forty-eight exceptions for this Court's consideration on appeal. However, appellants abandoned twenty-one of these and chose to treat only twenty-seven exceptions in the form of ten questions presented. Exceptions not argued in appellants' brief are deemed abandoned. *State v. Givens,* 267 S. C. 47, 225 S. E. (2d) 867 (1976).

Appellants first contend the trial judge should have quashed the indictments on the basis they were denied a full preliminary hearing pursuant to Section 22-5-320, Code of Laws of South Carolina (1976). We disagree. The thrust of their argument is that the evidence presented by the State at the preliminary hearing was hearsay testimony by the chief investigating police officer who read into the record statements of other witnesses that were unavailable for cross examination by appellants. The record indicates that direct testimony of his investigation was offered by the investigating officer as well. Hearsay testimony does not render a preliminary hearing unlawful. *State v. Conyers,* 268 S. C. 276, 233 S. E. (2d) 95 (1977).

A defendant in a criminal proceeding is afforded a preliminary hearing so that he can be appraised of the nature of the State's evidence. *State v. Flood,*

257 S. C. 141, 184 S. E. (2d) 549 (1971). The accused may not offer any evidence, but is allowed to cross examine the witnesses presented by the State in its attempt to show probable cause. *State v. White,* 243 S. C. 238, 133 S. E. (2d) 320 (1963). This is the scope of a preliminary hearing in our State. Appellants are not entitled to expand the hearing into a discovery proceeding wherein they may cross examine all the State's witnesses, nor does the language of Section 22-5-320 require the State to come forward with all its witnesses and evidence at this stage. See 21 Am. Jur. (2d) *Criminal Law* § 449.

Appellants also assert error in the trial judge's refusal to allow their counsel to *vior dire* the jury panel individually, and while sequestered. This is without merit. We are satisfied, as in *State v. Neeley,* 271 S. C. 33, 244 S. E. (2d) 522 (1978), that the trial judge fully complied with the *voir dire* requirements of Section 14-7-1020, Code of Laws of South Carolina (1976). He also questioned the jurors individually in regard to certain specifics as requested by appellants. We are convinced that his refusal to allow counsel to question the jurors any further was well within the bounds of his discretion as to the scope of juror examination and we perceive no error. *State v. Dawkins,* 268 S. C. 110, 232 S. E. (2d) 228 (1977); *State v. Peterson,* 255 S. C. 579, 180 S. E. (2d) 341 (1971); *State v. Britt,* 237 S. C. 293, 117 S. E. (2d) 379 (1960), cert. denied, 365 U. S. 886, 81 S. Ct. 1040, 6 L. Ed. (2d) 197 (1961). Although it may not be reversible error for a trial judge in his discretion to permit counsel also to examine prospective jurors, we reaffirm that the better practice is for the judge to conduct the *voir dire. State v. King,* 158 S. C. 251, 155 S. E. 409 (1930); *State v. Britt, supra; State v. Peterson, supra.*

Appellants next argue that the trial judge erred in admitting certain evidence and testimony they characterize as fruits of an illegal arrest. The appellants were arrested without warrants. It is well settled that a police officer may conduct a warrantless arrest if, at the time

of the arrest, the officer has reliable information or reasonable grounds that would justify his belief that a felony has been committed and that the arrestee is the perpetrator. *State v. Bell,* 263 S. C. 239, 209 S. E. (2d) 890 (1974), cert. denied, 420 U. S. 1008, 95 S. Ct. 1453, 43 L. Ed. (2d) 767 (1975); *State v. Singleton,* 258 S. C. 125, 187 S. E. (2d) 518 (1972); *State v. Thomas,* 248 S. C. 573, 151 S. E. (2d) 855 (1966).

At the moment of appellants' arrests, the arresting officers knew the victim's descriptions of her assailants and the automobile they used while committing the offenses. They had a description of an automobile and its occupants seen by a gas station attendant in the area and around the time of the crimes that matched the victim's descripions. They had located an automobile matching the descriptions and had obtained separate positive identifications of the automobile from both the victim and the gas station attendant. They had information that the occupants of the house where the car was parked matched the descriptions given by the victim of the assailants.

The arrest of appellant Jones was made when he attempted to pull out of the driveway in the automobile after having noticed police surveillance. When stopped, appellant Jones showed the arresting officer photo identification of himself as having a full beard, as the victim had described the male assailant. Appellant Jones was then placed under arrest and the arrest of appellant Parris, who was at the time inside the house, followed. The arrests were made the same day the crimes were committed.

This Court has on prior occasions upheld warrantless arrests of felony suspects based on a victim's description of the assailant and an automobile. See *Bell, supra* and *Singleton, supra.* We hold that these facts and circumstances cumulatively form sufficient probable cause for appellants' arrests.

Appellants likewise contend the search of appellant Jones' automobile was illegal because it lacked probable cause and began prior to the arrival of the search warrant on the scene. We disagree. The record shows appellant Jones and his brother hurriedly removed a suitcase from the car and then attempted to leave in the automobile after having notice police surveillance. The opportunity for search was fleeting. The exigency of the situation justified the intrusion. *State v. Griffin,* 262 S. C. 447, 205 S. E. (2d) 186 (1974). In addition, the search began after the officers received word by radio that the search warrant had been obtained and was en route. We have held that it is not necessary to serve the owner of the premises with the search warrant prior to commencing the search. *State v. Chandler,* 267 S. C. 138, 226 S. E. (2d) 553 (1976). The search was inevitable and imminent. Therefore, application of the exclusionary rule would be inappropriate in any event. *State v. Sachs,* 264 S. C. 541, 216 S. E., (2d) 501 (1975) ; *State v. Chandler, supra.*

The victim made photographic identifications of the appellants before trial. In addition to the argument that the identifications were a product of an illegal arrest, appellants contend that the photo line-ups were so suggestive as to violate due process. The lower court, after hearing testimony on the line-up procedure and examining the photos used in the line-up, found nothing suggestive about them and admitted the photos and the identifictaion. We agree.

This Court has recently considered the use at trial of pretrial photographic identification. *State v. Denson,* 269 S. C. 407, 237 S. E. (2d) 761 (1977). We therein recognized that "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U. S. 98, 114, 97 S. Ct. 2243, 2253, 53 L. Ed. (2d) 140, 154 (1977).

The reliability of the victim's identificaton of appellants at the photo line-up is established by the circumstances. The opportunity to observe her assailants

during the period of approximately an hour and a half she spent with them, the fact that she was not a mere passerby witness but the victim of the crimes, the correctness of her descripions given police immediately after the commission of the crimes, the fact that no doubt was elicited from the victim at trial as to her identifications, and the passage of only two weeks between the crimes and the photo line-ups are the factors which support reliability. *Manson, supra.*

Further buttressing the reliability of the photo identification by the victim is the identification procedure itself. We have reviewed the record in this regard, and find that the procedure and the photographs are unobjectionable on due process grounds. The photo identification was properly admitted.

In view of the reliability of the photo identification and the circumstances enumerated above, the in-court identification was also properly admitted. There was no "substantial likelihood of irreparable misidentification." *Simmons v. U. S.,* 390 U. S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. (2d) 1247, 1253 (1968).

Appellants further object to the admission of the photo identification on the ground that the photo identification was a crucial stage at which appellants were denied their right to counsel. The photo line-up was conducted after counsel had been appointed to represent appellants, but without counsel present. The United States Supreme Court held in *United States v. Ash,* 413 U. S. 300, 93 S. Ct. 2568, 37 L. Ed. (2d) 619 (1973), that the Sixth Amendment does not grant an accused the right to counsel at photo line-ups conducted by the government for the purpose of identifying the offender. We agree. We feel that the photo line-ups in this case, found to be within the purview of due process by the lower court, were not a confrontation requiring the presence of appellants' counsel.

Appellants next assign error to the trial judge's admission of "bite mark" expert opinion evidence on the basis that such evidence is inherently unreliable. We disagree.

The use of dental records to assist in identifying a deceased is a widely accepted and recognized procedure. However, the comparison of bite marks on a victim's body with the dentiton of an accused to prove identify is a relatively new prosecutorial tool. It rests on the principle that a person's dentition, like his fingerprints, is uniquely his own.

We are aware of four jurisdictions which have considered the admissibility of "bite mark" testimony, and all four have found such evidence reliable and decided in favor of admitting the evidence. *People v. Milone,* 43 Ill. App. (3d) 385, 2 Ill. Dec. 63, 356 N. E. (2d) 1350 (1976); *Niehaus v. State,* 265 Ind. 655, 359 N. E. (2d) 513 (1977), cert. denied, 434 U. S. 902, 98 S. Ct. 297, 54 L. Ed. (2d) 188; *Patterson v. State,* Tex. Cr. App., 509 S. W. (2d) 857 (1974); *People v. Marx,* 54 Cal. App. (3d) 100, 126 Cal. Rptr. 350 (1975).

In reliance on the case of *Frye v. United States,* 54 App. D. C. 46, 293 F. 1013 (1923), appellants argue that the admissibility of scientific evidence requires a preliminary showing of general acceptance of the techniques and theories by the scientific community. In this case, we think admissibility depends upon ". . . the degree to which the trier of fact must accept, on faith, scientific hypotheses not capable of proof or disproof in court and not even generally accepted outside the courtroom." *People v. Marx, supra.*

The admissibility of expert testimony in this State is a matter within the discretion of the trial court. *Prince v. Associated Petroleum Carriers,* 262 S. C. 358, 204 S. E. (2d) 575 (1974). There was no objection to the qualifications of the experts in their respective fields. The jury in the instant case heard the testimony of a pathology photographer employed by the Medical University of South Carolina who photographed the bite marks on the victim's breasts and enlarged the prints to life size, testimony of a prosthodontist who prepared the dental impres-

sions of appellants, and the testimony of a forensic odontologist who examined the bite marks and made the comparisons of the life size photographs of the bite marks with the impressions. The odontologist's testimony was that the plaster dental impressions taken of appellant Jones "unquestionably match the bites and their marks in all aspects, all thirty seven aspects, that are present on [the photographs]." There was no showing that the techniques and theories employed were other than accepted by the photographic and dental communities. The odontologist explained his comparisons and resulting opinion in a manner that could be understood by laymen.

As stated in *Marx, supra*:

Further, in making their painstaking comparisons and reaching their conclusions, the experts did not rely on untested methods, unproven hypotheses, intuition or revelation. Rather, they applied scientifically and professionally established techniques—X-rays, models, microscopy, photography —to the solution of a particular problem which, though novel, was well within the capability of those techniques. In short, in admitting the evidence, the court did not have to sacrifice its independence and common sense in evaluating it.

126 Cal. Rptr. 356.

We find that the trial court properly exercised its discretion in admitting the "bitemark" evidence and expert testimony for the jury's determination of its probative value.

Appellants next contend the lower court erred in refusing to charge the lesser-included offenses of robbery and larceny in conjunction with the armed robbery instruction. We disagree.

It is axiomatic that the law to be charged in a case is determined by the evidence presented. *State v. Gates,* 269 S. C. 557, 238 S. E. (2d) 680 (1977). The victim's testimony was the sole evidence presented on the charge of armed robbery. Her testimony was that she was abducted

by the male assailant who forced her into the automobile with a knife to her throat and then her back. She submitted to the crimes committed against her under the continuing threat of the knife and her assailants. She testified that during the rape she saw the knife in the hand of the female perpetrator. She feared for her life. After the assailants were satiated from sexually assaulting the victim, she was taken from the car, her ring was removed, and she was knocked to the ground. The male assailant then slashed her throat with a knife. The assailants returned to the car and left the scene with the victim's pocketbook and other belongings.

This testimony was undisputed. In fact, there is no disputed factual element of the offense charged other than identity, and no evidence proffered by appellants to support the lesser included offenses. Their defense was alibi. Thus, the factual issue was simply whether or not the appellants were the perpetrators of the crimes charged. See *State v. Cude,* 265 S. C. 313, 218 S. E. (2d) 240 (1975). Unless there is evidence tending to show that appellants are guilty of robbery or larceny, it is not error for the trial court to refuse to submit these lesser-included offenses to the jury. See *State v. Foxworth,* 269 S. C. 496, 238 S. E. (2d) 172 (1977); *State v. Mickle,* S. C. 254 S. E. (2d) 295 (1979).

The Court of Appeals of North Carolina addressed this issue on an appeal from an armed robbery conviction in *State v. Clemmons,* 34 N. C. App. 101, 237 S. E. (2d) 298 (1977):

In a prosecution for armed robbery, the trial court is not required to submit the lesser included offense of common law robbery unless there is evidence of defendant's guilt of that crime. If the State's evidence shows an armed robbery, and there is no conflicting evidence on the elements of the crime charged, an instruction on common law robbery is not required.

237 S. E. (2d) at 301.

Appellants' contention that they could not lawfully be convicted of armed robbery when the evidence does not show that at the exact moment the victim's ring was taken the assailants were armed is frivolous. It is not necessary that the perpetrator be armed throughout the commission of the crime. The North Carolina Supreme Court upheld an armed robbery conviction under similar circumstances in *State v. Joyner*, 35 N. C. App. 89, 243 S. E. (2d) 367 (1978):

It is clear from this evidence that Ms. Lincoln was placed under a continuing threat with a firearm. Though Ms. Lincoln did not testify that defendant actually pointed the gun at her at the time she gave her ring to his accomplice, earlier there had been such "use" of the firearm as to force her to commit certain acts, and it had been made clear to her on several occasions prior to the actual taking of her ring that the firearm would be used against her if she did not comply. . . . The evidence presented by the State was, therefore, sufficient to overcome defendant's motion for nonsuit. 243 S. E. (2d) at 373.

Appellants next claim the trial court erred in ruling that the State could elicit testimony from appellant Parris that she smoked a marijuana cigarette shortly before the time the crimes were committed. Based on this ruling, defense counsel brought out this testimony on direct examination. They assert that this was evidence of a prior unconnected crime which does not fall within the well-recognized exceptions enunciated in *State v. Lyle*, 125 S. C. 406, 118 S. E. 803 (1923), and its progeny such as *State v. Gregory*, 191 S. C. 212, 4 S. E. (2d) 1 (1939). However, ". . . evidence which is relevant to establish the guilt of the accused of the crime charged is not rendered inadmissible by the fact that it incidentally proves or tends to prove him guilty of another and distinct crime. *State v. Gregory* and *State v. Lyle*, supra." *State v. Bullock*, 235 S. C. 356, 379, 111 S. E. (2d)

657, 668 (1959), appeal dismissed 365 U. S. 292, 81 S. Ct. 686, 5 L. Ed. (2d) 570 (1961).

In view of the bizarre sexual nature of the crimes, ██ ██ such evidence was relevant to the state of mind and condition of the appellant Parris at the time the crimes were committed. The trial judge did not abuse his discretion in allowing the testimony, even though it did incidentally tend to prove appellant guilty of a misdemeanor. See *Lassere v. State,* Tex. Cr. App., 458 S. W. (2d) 81 (1970), cert. denied, 401 U. S. 920, 91 S. Ct. 906, 27 L. Ed. (2d) 822. The test as pointed out in *Lyle* and *Gregory* is whether there exists logical relevance between the extraneous criminality and the crime or crimes charged. The fact that appellant smoked marijuana in close proximity to the time the crimes were committed is clearly relevant to the condition and state of mind of appellant. Parris just as evidence of intoxication would be.

Appellants' final assignment of error is in the trial ██ judge's refusal to charge a special identification instruction found in *United States v. Telfaire,* 152 U. S. App. D. C. 146, 469 F. (2d) 552 (1972). This has no merit. First, *Telfaire* emphasizes the importance of a special identification instruction where the only evidence is the sole testimony of an eye witness or victim. Such was clearly not the case here. Second, we feel that the lower court's instruction on the credibility of the witnesses' testimony sufficiently covered the believability of the victim's identification.

For the foregoing reasons, the convictions and sentences of appellants are affirmed.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.