**UNITED STATES of America, Plaintiff**

v.

**(1) Eddie S. RODRIGUEZ–BERRIOS, Defendant.**

**No. CR 04–081(PG).**

United States District Court, D. Puerto Rico.

Aug. 3, 2006.

Lydia Lizarribar–Buxo, Lizarribar Masini Law Office, San Juan, PR, PHV John R. Martin, Martin Brother PC, Atlanta, GA, for Eddie S Rodriguez–Berrios (1) also known as Samir (1), Defendant.

Ernesto G. Lopez–Soltero, United States Attorney's Office, Maria Dominguez–Victoriano, United States Attorney's Office, Sonia I. Torres–Pabon, United States Attorney's Office, San Juan, PR, for USA, Plaintiff.

### OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is defendant Rodriguez–Berrios' "Ex Parte Request for Court Authorization to Retain Expert on Perception and Memory (Eye Witness Testimony Expert) Pursuant to Criminal Justice Act." (Docket No. 369). Having carefully considered defendant's arguments, along with the proffer from Dr. Geoffrey R. Loftus, Ph.D. (Docket No. 415) and the applicable case-law, the Court **DENIES** the motion for the reasons that follow.

### I. Background

On April 14, 2004, defendant Eddie Samir Rodriguez–Berrios was charged by way of superseding indictment with three counts in connection with a car-jacking in which the victim, Yesenia Ortiz–Acosta, was allegedly abducted, sexually abused, and ultimately slain, all in violation of 18 U.S.C. §§ 371, 2119(3) and 2, and 844(h)(1) and (2). (Docket No. 25). In anticipation of trial, and having been notified that the government would present the testimony of alleged eyewitnesses, defendant filed the motion currently before the Court. Upon the Court's order (Docket No. 409), defendant filed a proffer in the form of a written report signed by Dr. Geoffrey R. Loftus, Ph.D explaining the foundations and substance of the expert testimony. (Docket No. 415).

### II. Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony, and prescribes that

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert…may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is

the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Consonant with the fact that expert testimony is almost invariably cloaked with an aura of reliability, Rule 702 embodies a mandate for district courts to perform the gate-keeping function of screening such evidence for both reliability and relevance. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

■ Expert testimony "must be relevant not only in the sense that all evidence must be relevant...but also in the incremental sense that the expert's opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 81 (1st Cir.1998) (citations omitted). In this context, "[t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having specialized understanding of the subject involved in the dispute." Fed.R.Evid. 702 advisory committee's notes (citing Ladd, *Expert Testimony,* 5 Vand.L.Rev. 414, 418 (1952)).

Expert testimony on eyewitness identification harbors interesting and rather prickly questions of admissibility, because, broadly speaking, such testimony involves "a credibility determination within the ken of the ordinary judge and juror-unlike, say, DNA identification." *United States v. Brien,* 59 F.3d 274, 276 (1st Cir.1995). Federal Rule of Evidence 702, however, permits evidence that "assist[s]" the trier of fact; "and quite possibly an expert such as a psychologist familiar with identification problems could give the jury back-ground information about the mechanism of memory, types of errors, error rates, and other information not commonly possessed by the jury-information that may even be at odds with what a judge or juror might expect." *Brien,* 59 F.3d at 276–77.

But helpfulness is "a matter of degree," *Id.* at 277, and because eyewitness identification evidence, like all other expert testimony, involves significant risks "that distinguish it from lay evidence about 'what happened here,'" *Id.,* its probative value must be carefully weighed against its tendency to cause unfair prejudice, confusion of the issues, or to mislead the jury. Fed. R.Evid. 403. Consequently, the First Circuit has refused "to adopt a blanket rule that qualified expert testimony on eyewitness identification must routinely be admitted or excluded." *Brien,* 59 F.3d at 277. Instead, district courts "should examine each case one by one, taking into account such concerns as the reliability and helpfulness of the proposed expert testimony, the importance and the quality of the eyewitness evidence it addresses, and any threat of confusion, misleading of the jury, or unnecessary delay." *United States v. Stokes,* 388 F.3d 21, 26 (1st Cir. 2004) (internal quotations omitted).

### III. Discussion

In support of his motion, defendant argues that "in essence, the government's case will be eyewitness testimony from five (5) persons who alleged to have seen a scene of an argument at the intersection of Branderi and identify the woman as Yesenia Ortiz Acosta and the male as Eddie Rodriguez Berrios." (Docket No. 269 at 2). Defendant's expert discusses the relevance of his expert opinion as to two of these five alleged eyewitnesses, Ms. Lebrón and Ms. Colón. As to the remaining eyewitnesses, the Court has not been made privy to the content or context of their

testimony, and Dr. Loftus did not include them in his proffer.

The defense first argues, albeit impliedly, that the government's case against Rodriguez–Berrios is based solely on eyewitness testimony, thus making the assistance of an expert essential to his defense. Though insufficient, defendant's argument is not completely off the mark. One of the factors district courts should be mindful of when evaluating the admissibility of eyewitness identification expert testimony is "the importance…of the eyewitness evidence it addresses." *Stokes,* 388 F.3d at 26. It would thus stand to reason that, when the government's case against a defendant relies exclusively on eyewitness testimony, the Court should scrutinize and consider the need for a qualified expert on the matter with greater care.

While the government will undoubtedly rely heavily on the credibility and reliability of the testimony of the eyewitnesses that place the defendant and the victim at the Branderi intersection on the day the car-jacking and murder allegedly occurred, its case does not depend *solely* on this evidence. Among other evidence, the government has proffered alleged acts of stalking and illegal recordings by the defendant, as well as testimony of alleged domestic violence from defendant against the victim. More important, the government has proffered, and the Court has admitted, several incriminating statements from the defendant. (Docket Nos. 412 and 413). While the Court will in no way speculate as to the weight, credibility, or reliability of this evidence, it is clear that this case is not one where the government will rely *exclusively* on eyewitness testimony at trial.

Having considered the importance to the government's case of the eyewitness evidence it addresses, we now turn to the substance of defendant's proffered expert witness' testimony. After discussing in general terms the role of an eyewitness expert and the scientific understanding of how perception and memory work, and the circumstances under which they fail, Dr. Loftus comments on what a perception expert such as himself would be able to contribute to the case at hand. (Docket No. 415 at 3). Before doing so, however, Dr. Loftus makes clear that when he testifies, he offers "no opinion as to the quality of any specific witness' memory or as to [the] ultimate issue of defendant's guilt or innocence." (*Id.*). With that caveat in mind, Dr. Loftus explains that there are three perception-memory issues relevant to this case, which specifically relate to two eyewitnesses, Ms. Lebrón and Ms. Colón: (1) the accuracy of Mrs. Colón's original perception of the two individuals in the car on the night of April 15, 1999; (2) the accuracy of Mrs. Colón's memory of having verbally identified the individuals whom she saw at the time she originally viewed them; and (3) Ms. Lebrón's memory that Ms. Colón identified the individuals at the time that she originally viewed them. (*Id.*).

By analyzing concepts such as general lighting conditions, the consequences of illumination from a car's interior light, the eyewitnesses' possible lack of attention, and post-event information, Dr. Loftus discusses "why whatever in-trial confidence that [Ms. Colón or Ms. Lebrón] demonstrate[…] about the events that occurred the night of April 15, 1999 should not, contrary to common sense, be construed as a reflection of the accuracy of their memories." (*Id.*). Specifically, analyzing the facts provided to him by defense counsel through the prism of the above-mentioned concepts, Dr. Loftus concludes that "Ms. Colón did not, in all likelihood, accurately perceive the identities of the individuals in the champagne car on the night of April

15, 1999[, and that despite this,] both Ms. Colón and Ms. Lebrón...subsequently believe[d]-honestly but incorrectly-that Ms. Colón verbally identified the car's individuals at the time that she viewed them that night." (*Id.*).

■ After carefully pondering the report and studying the case law, the Court finds that Dr. Loftus' testimony in this case is not relevant in the "incremental sense that..., if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz-Troche,* 161 F.3d at 81. Admittedly, lay jurors may not have the best possible knowledge of the organic and behavioral mechanisms of perception and memory. Grasping and weighing the effects of lighting, lack of attention, post-event information, and other factors on the identification of the defendant by the eyewitnesses, however, is not the kind of issue that the jurors would be unqualified or unable to determine "without enlightenment from those having specialized understanding of the subject involved in the dispute." Fed.R.Evid. 702 (advisory committee's notes.) This limited relevance is further underscored by the fact that defense counsel, as it has been the practice from time immemorial, may cross-examine the eyewitnesses about precisely the same sources of possible bias and unreliability as Dr. Loftus has considered in his proffer. Additionally, neither defendant's proffer nor anything else on the record suggests that this is a case where expert testimony on eyewitness identification might assist the jury because special circumstances exist, such as where an identification is made after a long delay or under conditions of extreme stress, *see, e.g., United States v. Harris,* 995 F.2d 532, 535 (4th Cir.1993), or where a witness' faculties were impaired at the time of the identification, *see, e.g., State v. Whaley,* 305 S.C. 138, 406 S.E.2d 369, 372 (1991), or

where no independent evidence corroborates the defendant's guilt. Consequently, Dr. Loftus' testimony in this case would involve little more than "a credibility determination within the ken of the ordinary judge and juror-unlike, say, DNA identification," and, thus, is of limited relevance to these proceedings. *Brien,* 59 F.3d at 276

Finally, the proffered expert testimony would create a substantial danger of undue prejudice and confusion because of its aura of special reliability and trustworthiness, which would outweigh its limited relevance. Unlike lay fact witnesses, experts such as Dr. Loftus come to the stand with impressive qualifications and persuasive theories grounded on science and research. While often invaluable to the search for truth, these experts' testimony carry a great deal of inherent reliability, which jurors can often confuse for infallibility. In cases such as this one, where vigorous and competent cross-examination can adequately flesh out the possible effect of factors such as lighting, lack of attention, and post-event information on the eyewitnesses identifications without exposing the jury to this type of prejudice, expert testimony can, and should, be excluded. *See* Fed.R.Evid. 403; *Stokes,* 388 F.3d at 26 (instructing trial courts to consider "any threat of confusion, misleading of the jury, or unnecessary delay" posed by eyewitness expert testimony when evaluating its admissibility.)

Though we need not go further, we conclude with two caveats: nothing in this opinion is meant to convey a general hostility towards expert testimony on eyewitness identification. Much less should this opinion be interpreted as a negative reflection of Dr. Loftus' report or qualifications, which are certainly impressive. It is the judgment of this court, however, that after carefully considering the facts and circumstances of this particular case, expert tes-

timony on the issue of memory and perception of eyewitnesses is inadmissible at trial, as it will not assist the jury, Fed. R.Evid. 702, and will likely cause undue prejudice, confusion, and delay. Fed. R.Evid. 403.

Having determined that the testimony of Dr. Loftus is inadmissible at trial, CJA funds for the engagement of Dr. Loftus or any other eyewitness identification expert are **DENIED**. *See United States v. Fosher*, 590 F.2d 381, 384 (1st Cir.1979) (holding that "if the exclusion of the expert evidence was within the discretion of the trial court, then the court clearly did not abuse its discretion in refusing to authorize funds.")

### *IV.   Conclusion*

For the reasons set forth above, defendant's motion for funds to retain a perception expert (Docket No. 369) is **DENIED**. Dr. Loftus' testimony, or any testimony from an eyewitness or perception expert, is **INADMISSIBLE** at trial.

**SO ORDERED.**