23431

The STATE, Respondent v. Samuel WHALEY, Appellant.
(406 S.E. (2d) 369)

Supreme Court

*Assistant Appellate Defenders Franklin W. Draper* and *Wanda Hagler Haile, South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Miller W. Shealy, Jr.,* and *Sol. James C. Anders,* Columbia, *for respondent.*

Heard March 4, 1991.

Decided July 8, 1991.

TOAL, Justice:

Samuel Whaley, appellant, was tried and convicted of burglary in the second degree, armed robbery and assault with intent to commit criminal sexual conduct. He was sentenced to consecutive terms of fifteen years, ten years and fifteen years, respectively. On appeal, Whaley asserts that the trial judge erred in refusing to admit into evidence expert testimony concerning the reliability of eyewitness identification. We agree; therefore, we reverse and remand for a new trial.

## FACTS

On January 28, 1988, when Joye Eisele was working late, she received a phone call, at approximately 10:45 p.m., from Jim Carnegie, a fellow employee. Carnegie told Eisele that he would be by to check on her in about fifteen minutes. Around 11:00 p.m., Eisele saw Carnegie drive by in his truck. When he did not come to the door after a few moments, she opened it to look for him. As she did this, a man, whom she later identified as Whaley, grabbed her, held a knife to her throat, and closed the door. Her assailant then forced Eisele to the second floor, where he demanded money. She gave him the $2.00 she had, but he demanded more money and forced her to go through desk drawers.

Throughout the incident, Eisele stared at the man in order to be able to identify him. He slapped her on two separate occasions and ordered her not to look at him. Her attacker, however, was wearing a black cloth over the lower half of his face the entire time he was with Eisele.

The assailant then forced Eisele to remove her clothes. As he was about to reach for her, he heard Carnegie enter the building. When he went to investigate, Eisele locked herself in one of the offices.

Upon seeing the man, Carnegie asked him what he was doing there. The assailant descended the stairs as Carnegie ascended. After the man had passed him on the stairs, Carnegie began pushing him and told him to leave. When the assailant reached the bottom of the stairs, he began waving the knife. Carnegie backed up. The man fled. During their encounter, the man was not wearing his mask, and Carnegie saw his face without obfuscation.

Eisele and Carnegie assisted the police in developing a composite drawing. Both Carnegie and Eisele separately identi-

fied appellant in a photographic lineup.

## LAW/ANALYSIS

At trial, appellant sought to introduce evidence of Dr. Spurgeon Cole that eyewitness identifications, particularly those by white victims of black defendants,[1] are not very reliable. Whether this type of evidence is admissible is a novel question.

Dr. Cole is professor of psychology. He received his Ph.D. in clinical psychology in 1966 and, over the more than twenty years since, has taught numerous courses on the psychology of perception, memory and recall and spoken frequently on the subject. Dr. Cole is conversant with the scientific literature on psychology of eyewitness identification and has published eight to ten articles and a textbook on the subject. He has qualified as an expert in more than fifty trials. His qualifications are impeccable.

During the proffer of testimony, Dr. Cole explained the three stages of eyewitness identification and the various psychological factors that may affect the reliability of the identification. The first stage of eyewitness identification is the acquisition stage, in which the witness must be able to see and to comprehend the situation. There are two types of factors that affect acquisition: internal and external. Examples of internal factors are fear, stress and fatigue. External factors include: the presence of a weapon; exposure time; and lighting. Another factor affecting acquisition is race. The error rate of cross racial identification is higher than the error rate of same race identification.

The second stage is the retention or memory stage. A witness' memory is affected by the time lapse between the incident and the identification and between the identification and the trial.

In the third, or recall stage, the witness must recall the incident and make an identification. Factors affecting the witness' recall are the organization and content of a lineup and the existence of a composite drawing. Race also affects the witness' ability to recall accurately.

---

[1] Eisele and Carnegie are white. Whaley is black.

The State objected to Dr. Cole's testimony on the grounds that neither appellant nor Dr. Cole had established Dr. Cole's acceptance within the scientific community and that, pursuant to *State v. Jones*, 273 S.C. 723, 259 S.E. (2d) 120 (1979), the field was not a recognized area of expertise. While the trial judge did find that Cole was qualified as an expert, he sustained the prosecution's objection to the testimony, noting that the courts of this state were not ready for that sort of testimony to be submitted to a jury.

The admissibility of *scientific* evidence depends upon "the degree to which the trier of fact must accept, on faith, scientific hypotheses not capable of proof or disproof in court and not even generally accepted outside the courtroom." *State v. Jones, supra* (emphasis added). Dr. Cole's testimony, however, is distinguishable from "scientific" evidence, such as DNA test results, blood spatter interpretation, and bite mark comparisons. An eyewitness identification witness gives expert opinion evidence similar to the type given by doctors or psychiatrists. Where the witness is a qualified psychologist who simply explains how certain aspects of every day experience shown by the record can affect human perception and memory, and through them, the accuracy of eyewitness identification, we see no reason to require a greater foundation. *People v. McDonald*, 37 Cal. (3d) 351, 690 P. (2d) 709, 208 Cal. Rptr. 236 (1984). Consequently, we are not persuaded that this type of testimony is required to meet the *Jones* test.[2]

---

[2] Although we are of the opinion that this type of testimony need not be subjected to the *Jones* test, we reject any contention that it does not comport with *Jones*. Psychologists have been conducting tests in the area of eyewitness identification for almost 95 years. The subject is a legitimate area of psychology and has generated a large body of work. No less than five treatises on the topic have recently been published, citing and discussing literally scores of studies on the pitfalls of such identification: *Eyewitness Testimony: Psychological Perspectives* (Wells & Loftus edits. 1984); *Evaluating Witness Evidence: Recent Psychological Research and New Perspectives* (Lloyd-Bostock & Clifford edits. 1983); Sobel, *Eyewitness Identification: Legal and Practical Problems* (2d ed 1983); Loftus, *Eyewitness Testimony* (1979); Yarmey, *The Psychology of Eyewitness Testimony* (1979); see also Johnson, *Cross-Racial Identification Errors in Criminal Cases* 69 Cornell L. Rev. 934 (1984); Note, *Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification* 29 Stan. L. Rev. 969 (1977). We find that Dr. Cole did not rely on untested methods, unproven hypotheses, intuition or revelation but based his testimony on established techniques and authorities. Thus, in any event, the testimony would have been admissible under *Jones*.

Generally, the admission of expert testimony is a matter within the sound discretion of the trial court. *State v. Jones, supra.* While the decision whether to admit this type of testimony from qualified experts shall remain in the discretion of trial judges, we note two instances in which this type of evidence is admissible and in which its exclusion would constitute an abuse of discretion.

In the first instance, an expert's testimony on eyewitness reliability is admissible where the eyewitness is mentally retarded, suffering from mental problems, or has some other type of mental or physical disability that could impair perception or reliability. *See e.g., Jones v. State,* 232 Ga. 762, 208 S.E. (2d) 850 (1974).

In the second instance, an expert's testimony is admissible where, as here, the main issue is the identity of the perpetrator, the sole evidence of identity is eyewitness identification, and the identification is not substantially corroborated by evidence giving it independent reliability. *See, People v. McDonald, supra.* We note that other factors favoring admission of Dr. Cole's evidence in this case are Eisele's testimony that her assailant's features were partially obscured during the entire incident; the cross-racial nature of the identification; and the short length of time each witness was exposed to the assailant.

Accordingly, we hold that it was an abuse of discretion to exclude Dr. Cole's testimony concerning eyewitness reliability because the main issue in this case was the identity of the assailant, the only evidence establishing Whaley as the assailant was the testimony of the two eyewitnesses, and other factors existed which could have affected the identification. We caution, however, that nothing in this opinion should be construed as allowing an expert to give his or her opinion of a particular witness' identification.

Reversed and remanded.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.