592 S.E.2d 621

The STATE, Respondent,

v.

John Boyd FRAZIER, Appellant.

No. 25763.

Supreme Court of South Carolina.

Heard April 22, 2003.
Decided Jan. 5, 2004.
Rehearing Denied Feb. 18, 2004.

L. Morgan Martin and George M. Hearn, Jr., both of Hearn, Brittain & Martin, P.A., of Conway, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

Justice WALLER:

Appellant, John Boyd Frazier (Frazier), was convicted of murder, conspiracy to commit murder, and armed robbery; he was sentenced to concurrent terms of life imprisonment for murder, thirty years for armed robbery, and five years for conspiracy. We reverse.

## FACTS

On June 9, 1998, William Brent Poole (Brent) was shot to death while walking on the beach with his wife, Kimberly Renee Poole (Renee), near 81st Avenue North in Myrtle Beach. According to Renee, she and Brent were walking along the beach towards their motel when they were approached by a man wearing black clothes and a ski mask. The man told them to lie face down on the beach and give him their money and jewelry. They complied, whereupon the assailant shot Brent twice in the head and fled.

Shortly after the shooting, Renee indicated to police that she had been having marital problems with Brent and had been "involved" with Frazier. Frazier and Renee were subsequently arrested and charged with Brent's murder. At trial, the state's case against Frazier was largely circumstantial. The only direct evidence placing Frazier near the scene of the crime was the identification testimony of Mark and Donna Hobbs, two passersby who identified Frazier from a photographic line-up as the suspicious-looking man they had seen near the scene of the crime on June 9, 1998. The jury convicted Frazier of murder, conspiracy to commit murder and armed robbery.[1]

## ISSUES[2]

1. Did the trial court err in excluding the testimony of appellant's expert, Donald Smith, and a videotape made by Smith depicting the scene of the eyewitness identification?

2. Did the trial court err in excluding portions of the videotaped deposition of Dr. Elizabeth Loftus concerning a "Photo Lineup Study"?

3. Did the trial court err in allowing the testimony of Frazier's co-worker, Bruce Sovereign?

---

1. Renee was convicted of murder and conspiracy to commit murder.

2. The denial of Frazier's motion for a directed verdict is affirmed pursuant to Rule 220(b), SCACR, and the following authority: *State v. Pinckney*, 339 S.C. 346, 529 S.E.2d 526 (2000) (if there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury).

## 1. VIDEOTAPE OF CRIME SCENE

At trial, Frazier attempted to introduce a videotape made of the scene of the crime by Donald Smith, a videographer. The purpose of the videotape is to demonstrate the effect of lighting on images at the motel where Mr. and Mrs. Hobbs claimed to have seen Frazier on the night of the crime. Counsel for Frazier was attempting to convey the idea that because the man observed by the Hobbs was backlit by motel lighting, there would have been shadows cast upon him, thus calling into question the reliability of the Hobbses' identification. Smith testified he had made the videotape at 11:30 P.M. on February 11, 2000, and that the exterior lighting conditions present at the motel were the same on that date as on the date of the crime. Smith also testified that the effect of a backlit subject would not be affected by the moonlight or the atmospheric conditions or other natural events.

The trial judge refused to qualify Smith as an expert, and ruled the videotape inadmissible stating, "The court is of the view that it is not possible, scientifically human or any other study or discipline, to recreate precisely the lighting that occurred that evening. . . . The ability to comprehend lighting . . . that's subjective, not objective, and that is an intangible . . . I just don't think it's capable of recreation."

█ In *State v. Whaley*, 305 S.C. 138, 143, 406 S.E.2d 369, 372 (1991), we recognized that, although the admission of expert testimony is generally a matter within the trial court's discretion, the exclusion of expert testimony on the issue of eyewitness reliability constitutes an abuse of discretion in cases in which, "the main issue is the identity of the perpetrator, the sole evidence of identity is eyewitness identification, and the identification is not substantially corroborated by evidence giving it independent reliability." We find the present case meets these criteria. Accordingly, under *Whaley*, the trial court abused its discretion in refusing to admit Smith's testimony.

█ Further, we find the trial court likewise erred in excluding the videotape made by Smith. A trial court's admission or rejection of evidence is generally reviewed for an abuse of discretion. An abuse of discretion occurs when the trial court's ruling is based on an error of law. *State v. McDonald*, 343 S.C. 319, 540 S.E.2d 464 (2000). As noted by this Court in

*Weaks v. South Carolina State Hwy. Dep't,* 250 S.C. 535, 542, 159 S.E.2d 234, 237 (1968):

> The rule laid down by this court for the introduction of evidence and an experiment out of court requires that the experiment be made under conditions and circumstances similar to those prevailing at the time of the occurrence involved in the controversy. **It is not required that the conditions be identical with those existing at the time of the controversy; it is sufficient if there is a substantial similarity.**

(emphasis supplied). As noted previously, the trial judge ruled he did not believe the lighting conditions in effect on the night of the crime were capable of recreation. *Weaks,* however, requires only a substantial similarity, not a precise recreation. Smith's testimony demonstrated a sufficient degree of similarity to render the videotape admissible. Accordingly, we find the trial court committed an error of law in refusing to admit it.

## 2. DR. LOFTUS STUDY

■ Frazier also asserts the trial court erred in excluding a portion of Dr. Loftus' videotaped deposition which discusses a "Photo Lineup Study," conducted by Wofford College Professor, Dr. Alliston Reid. We agree and find this study should have been admitted.

The purpose of Dr. Loftus' testimony was to impeach the reliability of the Hobbses' identification of Frazier from a photographic lineup. Dr. Loftus based her testimony upon a study conducted by Dr. Alliston Reid, a psychology professor at Wofford College. The Hobbses had identified the man they saw on the beach as having a large forehead and large eyes, and Dr. Reid's study was intended to show the lineup procedure used in this case was unduly suggestive inasmuch as Frazier had larger eyes and a larger forehead than the other subjects in the lineup.

■ As noted previously, the Hobbses' identification was crucial to the state's case against Frazier. Accordingly, we find that Frazier should have been permitted to impeach the reliability of the identification procedure through Dr. Loftus' testimony. *State v. Council,* 335 S.C. 1, 515 S.E.2d 508 (1999) (evidence will assist the trier of fact, the expert witness is

qualified, and the underlying science is reliable). *Whaley, supra,* specifically permits expert testimony on the issue of eyewitness reliability. As with the testimony and videotape of Donald Smith, Dr. Loftus' testimony demonstrating a lack of reliability in the eyewitness identification of Frazier was essential to the defense and its exclusion cannot, under the facts of this case, be deemed harmless error. Accordingly, the trial court's exclusion of this testimony is reversed.

### 3. TESTIMONY OF BRUCE SOVEREIGN

■ Finally, Frazier asserts the trial court erred in admitting testimony of his co-worker, Bruce Sovereign, to the effect that Sovereign overheard Frazier tell Renee during a telephone conversation that "somebody should kill that son-of-a-bitch," and Sovereign's testimony that he considered the statement very serious. We hold the trial court erred in admitting Sovereign's testimony.

■ A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter. Rule 602, SCRE; *State v. Williams,* 321 S.C. 455, 469 S.E.2d 49 (1996).

Here, Sovereign testified that **approximately** four weeks prior to the shooting, Frazier stomped into the room where they worked, having been on the phone with someone Sovereign **believed** to be Renee, and said **either** "somebody should kill that son-of-a-bitch" or "I'm going to kill that son-of-a-bitch." Sovereign "guessed" Frazier had been speaking to Renee and he believed Frazier's statement was serious.

We find Sovereign's testimony is simply beyond the ambit of Rule 602. Sovereign did not know **when** the statement was made, he did not know to **whom** Frazier was speaking, and he could not recall the exact **content** of the statement he attributed to Frazier. Under these circumstances, we hold the testimony was too speculative to be admitted.

■ Moreover, unlike *State v. Williams, supra,* we cannot say the erroneous admission of Sovereign's testimony was harmless error. As noted above, there was little direct evidence linking Frazier to the crime, and the trial court erroneously limited Frazier's attempts to impeach the only direct evidence against him, i.e., the eyewitness identification by the Hobbses. Under these circumstances, we simply cannot say

that the erroneous admission of statements accusing Frazier of stating "somebody should kill that son-of-a-bitch" constitutes harmless error.

Accordingly, we reverse and remand for a new trial.

**REVERSED AND REMANDED.**

TOAL, C.J., and MOORE, J., concur.

PLEICONES, J., files opinion concurring in result and dissenting in part, in which BURNETT, J., concurs.

Justice PLEICONES concurring in result and dissenting in part:

I agree with the majority that Mr. Frazier's conviction should be reversed and remanded because the trial court erred in excluding the video tape expert's testimony and erred in allowing the testimony of Mr. Sovereign. However, in my opinion, the trial court properly excluded Dr. Loftus' testimony discussing a "Photo Lineup Study" conducted by Dr. Alliston Reid of Wofford College.

The proffered study reports the results of an experiment conducted by Dr. Reid in which sixty random participants viewed the photographic lineup shown to the Hobbses. The participants were asked to identify the individual who best matched the description "high forehead and large round eyes." [3] Forty-eight of the sixty participants selected appellant's photograph from the line-up. The report concludes the photographic lineup was "strongly biased toward selection of Photo Number 1 [i.e., appellant's photograph] . . . [Photo Number 1] was a better match to the written description of the suspect than was any other photo."

In *State v. Whaley*, 305 S.C. 138, 406 S.E.2d 369 (1991), we approved the admission, under certain circumstances, of eyewitness reliability testimony by expert witnesses. The Court stated, however, "that nothing in this opinion should be construed as allowing an expert to give his or her opinion of a particular witness' identification." 406 S.E.2d at 372.

The purpose of Dr. Reid's study was to address the reliability of the photographic lineup presented to the Hobbses.

---

**3.** The Hobbses initially described the man they saw on June 9th as having large, round eyes and a high forehead.

Clearly, Dr. Loftus' testimony about the results of the study was an attempt to establish that the Hobbses' identification of appellant was unreliable. The nature of this testimony was specifically precluded in *State v. Whaley*, 406 S.E.2d at 372.

The trial judge properly excluded Dr. Loftus' testimony concerning the study of the photographic lineup. The participants in Dr. Reid's study were, in effect, instructed to select the photograph of the individual which most closely matched the description "large, round eyes" and "high forehead." The Hobbses, on the other hand, were asked *if* one of the six photographs in the lineup was the individual they had seen on June 9. In addition to their given description of the individual as having large, round eyes and a high forehead, the Hobbses also had general perceptions of the individual they saw at the Carolina Winds Motel which were not specifically articulated. Accordingly, Dr. Reid's finding of a bias in the photographic lineup did not fairly challenge the reliability of the Hobbses' identification of appellant in the lineup. *See* Rule 404, SCRE (evidence is relevant if it tends to make the existence of any fact at issue more or less probable).

For the above reasons, the trial judge did not abuse his discretion by refusing to allow Dr. Loftus to testify about Dr. Reid's study.

BURNETT, J., concurs.