644 S.E.2d 755

Eugene JAMISON and Delores Isaac, individually
and as Personal Representative of the Estate
of Virnell Isaac, Appellants,

v.

FORD MOTOR COMPANY, Respondent.

No. 4220.

Court of Appeals of South Carolina.

Submitted March 1, 2007.

Decided March 19, 2007.

Rehearing Denied May 17, 2007.

250

252

254

Stephanie P. McDonald and Samuel K. Allen, both of Charleston; and James E. Carter, of Savannah, GA, for Appellants.

J. Kenneth Carter, Jr., of Columbia; David R. Kelley and Wayne D. Struble, both of Minneapolis, MN; and Jeffery T. Gorcyca, of Detroit, MI, for Respondent.

ANDERSON, J.:

Eugene Jamison and Delores Isaac, individually and as Personal Representatives of the Estate of Virnell Isaac (collectively Jamison), appeal the circuit court's: (1) exclusion of expert testimony and video evidence; and (2) denial of Jamison's motions for sanctions and relief from judgment. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

In July 1998, Virnell Isaac suffered major injuries to her liver when the 1993 Escort she was driving was involved in a frontal, angular collision with another car. Isaac died several days later as a result of the injuries sustained in the accident.

Jamison filed a wrongful death action against Ford Motor Company (Ford) alleging, in relevant part, that Isaac suffered fatal injuries because Ford negligently designed and implemented the driver's occupant protection system.[2] Ford equipped the 1993 Escort with a driver's side passive restraint system employing various components that worked collectively

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Jamison additionally averred that Ford failed to provide adequate warnings about proper use of the restraint system. However, this appeal does not involve claims regarding whether any warnings were inadequate.

to protect the driver in frontal, angular collisions. The passive restraint system components included: (1) an automatic, motorized shoulder belt that positioned itself over the occupant without any action by the occupant; (2) a seat pan; (3) a knee bolster; and (4) an energy absorbing car body. The restraint system required no affirmative action by the driver, making it completely passive and in compliance with Federal Motor Vehicle Safety Standard 208. The 1993 Escort was additionally equipped with a manual lap belt that required affirmative action from the passenger or driver to engage it. Jamison specifically complained that Ford negligently designed and implemented the various components of the restraint system, including the manual lap belt, the knee bolster, and the seat pan.

During discovery Jamison requested crash test reports and full videos of 1991 through 1993 Ford Escort crash tests. Ford responded by producing a summary of certification tests, but referred Jamison to Mazda, the company that conducted the requested crash tests, for the detailed reports and actual videos. Ford provided 1994 through 1996 Ford Escort crash test reports and videos. However, the 1994 through 1996 models, unlike the 1991 through 1993 models, were equipped with driver and passenger side airbag restraint systems.

In October 2003, Jamison filed a "Motion to Compel Production of Documents." Jamison asked the court to order Ford's production of the 1991 through 1993 test reports and videos. Additionally, Jamison urged that Ford be required to provide complete video tests, noting that the videos Ford had produced were "missing significant portions of the crash tests." Jamison sought sanctions against Ford for discovery abuses, claiming Ford had intentionally delayed discovery by submitting duplicative and non-responsive documents. The circuit court agreed Ford must supply the materials requested; however, the court refrained from imposing sanctions due to Ford's representation that the documents would be delivered. Ford subsequently surrendered a "small group of Mazda crash tests" and certified that all materials from Mazda regarding the crash tests had been yielded.

Ford filed motions in limine to exclude certain theories of liability Jamison asserted. Specifically, Ford contended (1)

Jamison was preempted by Federal law from arguing Ford's choice of the passive restraint system installed in the Escort was defective, i.e. that another type of restraint system would have prevented Isaac's injuries; (2) Jamison was preempted from challenging the geometry of the manual lap belt design; and (3) Jamison's claim that the manual lap belt design was defective should be excluded because no reasonable evidence existed to indicate Isaac wore the manual lap belt and that its defective design proximately caused her injuries.

The circuit court ruled: (1) federal regulations preempted Jamison from challenging Ford's choice of restraint system; (2) testimony suggesting a manual lap belt should have been a component of the 1993 Escort's passive restraint system was excluded because such evidence challenged Ford's choice of restraint system; and (3) Jamison was allowed to present evidence that the design of the passive restraint system was defective; however, any testimony that the passive restraint system was defective without a manual lap belt was preempted.

In January 2004, Jamison filed a motion for sanctions against Ford for alleged ongoing discovery abuse. Jamison argued a default judgment should be entered against Ford for willful and intentional failure to produce certain crash test data that Jamison received on January 19, 2004 from another source.[3] The circuit court declined to enter a default judgment without having an opportunity to review the evidence and determine its prejudicial effect.

Immediately prior to trial, the circuit court again considered various pending motions, including Jamison's motion for default judgment. At that time, Jamison informed the circuit court that additional videotapes of crash tests showing more views of occupant kinematics in the 1993 Escort had been discovered. Jamison urged the court to sanction Ford by prohibiting references to the 1993 Escort's compliance with federal regulations. The circuit court held Jamison failed to demonstrate Ford's conduct warranted such sanctions, and the motion was denied.

---

**3.** Jamison's attorney received the crash test documents from a plaintiff's attorney involved in other litigation with Ford.

During the pre-trial hearing, the circuit court revisited the issue of Jamison's defective lap belt claim. The circuit court held "[t]he lap belt ... argument is preempted," and Jamison cannot "criticize the lap belt." However, the court held that "the effectiveness of [the passive restraint] system, what it was designed and intended to do is subject to challenge...." The court confirmed that, in order to prove negligence based on any defective restraint system, Jamison must prove proximate cause.

The case was tried before a jury in February 2004. Jamison attempted to introduce a crash test video conducted on a 1995 vehicle that was identical to Isaac's 1993 Escort, except the 1995 vehicle was equipped with air bags. Jamison submitted that the tests demonstrated occupant kinematics. Ford objected to the tests based on the prejudicial effect of the air bag. The circuit court excluded the video under Rule 403, SCRE, concluding the probative value of the video was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and potential to mislead the jury. The jury returned a verdict in Ford's favor.

Subsequently, Jamison received a brochure advertising a 1993 European Escort. Jamison filed a Rule 60(b) motion for relief from judgment arguing the newly discovered evidence demonstrated the feasibility of an alternative design and further substantiated claims of Ford's discovery abuse. The circuit court found the brochure was cumulative and Jamison was not prejudiced by non-disclosure of the brochure. Jamison's motion for relief from judgment was denied

### LAW/ANALYSIS

### I. Expert Testimony

■ Jamison argues the circuit court erred in excluding expert testimony relating to the geometry and design of the manual lap belt Ford had installed in the 1993 Escort. Specifically, Jamison maintains the circuit court erred as a matter of law in relying on its interpretation of *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), that any challenge to the passive restraint system based upon the alleged defective manual lap belt was preempted. We disagree.

 Ford contends this issue is not preserved for our review. The failure to make a proffer of excluded evidence will preclude review on appeal. *State v. Simmons*, 360 S.C. 33, 46, 599 S.E.2d 448, 454 (2004); *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 503 S.E.2d 471 (1998). Generally, a party must request the opportunity to present an expert witness in order for the issue to be preserved for appellate review. *State v. Beam*, 336 S.C. 45, 51–52, 518 S.E.2d 297, 301 (Ct.App.1999). It is well settled that a reviewing court may not consider error claimed in the exclusion of testimony unless the record on appeal shows fairly what the rejected testimony would have been. *State v. Roper*, 274 S.C. 14, 20, 260 S.E.2d 705, 708 (1979). However, this rule regarding proffers has been relaxed where the appellate court is able determine from the record what the testimony was intended to show and that prejudice clearly exists. *State v. Jenkins*, 322 S.C. 360, 367, 474 S.E.2d 812, 816 (Ct.App.1996).

In this case, the record sufficiently identifies the testimony Jamison sought to introduce regarding the use of and alleged defects of the manual lap belt. Furthermore, as Jamison averred, the exclusion of expert testimony regarding the manual lap belt prevented Jamison from being able to "properly criticize the seatbelt design or to explain the full geometry of the defects in the belt system." Initially, Jamison's "primary criticism [was] aimed at lower torso restraint in this configuration, or lack thereof." The improper exclusion of the manual lap belt evidence would indubitably prejudice Jamison. Therefore, this issue is preserved for appellate review.

 On the merits, the admissibility of an expert's testimony is a matter within the circuit court's sound discretion. *Fields v. Regional Med. Ctr. Orangeburg*, 363 S.C. 19, 25, 609 S.E.2d 506, 509 (2005); *State v. Douglas*, 367 S.C. 498, 626 S.E.2d 59 (Ct.App.2006) *cert. pending; State v. Harris*, 318 S.C. 178, 456 S.E.2d 433 (Ct.App.1995). The trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion. *State v. Myers*, 359 S.C. 40, 51, 596 S.E.2d 488, 494 (2004); *Mizell v. Glover*, 351 S.C. 392, 570 S.E.2d 176 (2002); *State v. Grubbs*, 353 S.C. 374, 577 S.E.2d 493 (Ct.App.2003); *State v. Henry*, 329 S.C. 266, 495 S.E.2d 463 (Ct.App.1997). "An abuse of discretion occurs when the ruling is based on an error of law or a factual

conclusion that is without evidentiary support." *Douglas*, 367 S.C. at 507, 626 S.E.2d at 64.

 To warrant reversal based on the admission or exclusion of evidence, the complaining party must prove both the error of the ruling and the resulting prejudice. *Vaught v. A.O. Hardee & Sons, Inc.*, 366 S.C. 475, 480, 623 S.E.2d 373, 374 (2005); *Fields*, 363 S.C. at 26, 609 S.E.2d at 509; *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). To show prejudice, there must be a reasonable probability that the jury's verdict was influenced by the challenged evidence or the lack thereof. *Fields*, 363 S.C. at 26, 609 S.E.2d at 509.

**A. Federal Preemption Under National Traffic and Motor Vehicle Safety Act of 1966, Federal Motor Vehicle Safety Standard 208, the "Saving Clause," and *Geier v. American Honda Motor Company***

A priori, the initial issue in the case *sub judice* is whether by express federal preemption this state common law tort action is barred. Briefly, we review the federal preemption principles explicated in *King v. Ford Motor Co.*, 209 F.3d 886, 891 (2000).

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of and State to the Contrary notwithstanding." U.S. Const. art. VI. Thus, as has been clear since the Supreme Court's decision in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.), 316, 4 L.Ed. 579 (1819), any state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)).

In applying the Supremacy Clause, courts "start with the assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Therefore, " '[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case." *Id.* (citing *Cipol-*

*lone,* 505 U.S. at 516, 112 S.Ct. 2608, 120 L.Ed.2d 407). The Supreme Court has stated that Congress may make its intent to preempt clear either expressly or implicitly. *See Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). Implied preemption, in turn, takes two forms. "We have found implied conflict preemption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations and quotations omitted). In summary, then, there are three types of preemption-express preemption, implied conflict preemption, and implied field preemption.[4]

The cognoscenti of federal preemption jurisprudence bestow panoramic application so as to limit state common law tort actions. We decline to accept this broad-brush federal judicial barricade.

**1. National Traffic and Motor Vehicle Safety Act of 1966 (Safety Act) (80 Stat. 718, 15 U.S.C. § 1381 et seq. (1988 ed.))**

The express preemption provision contained in section 1392(d) of the Safety Act reads:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item or motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d) (1988 ed.).

**2. Federal Motor Vehicle Safety Standard 208**

Federal Motor Vehicle Safety Standard (FMVSS) 208, promulgated under the authority of the Safety Act, specifies

---

4. Field preemption occurs when federal law so occupies a field that state courts are prevented from asserting jurisdiction. *Black's Law Dictionary,* 612 (6th ed. 1990). Field preemption is not implicated in the instant case.

performance requirements for the protection of vehicle occupants in crashes. 49 C.F.R. § 571.208 (2006). FMVSS 208 establishes the various restraint systems manufacturers must install to comply with federal regulations; the requirements differ depending on the year the car was manufactured. *Id.* The version of FMVSS 208 in effect when the 1993 Escort was produced required automobile makers to certify passenger cars with a completely passive restraint system:

S4.1.2.1 First option—frontal/angular automatic protection system. The vehicle shall:

(a) At each front outboard designated seating position meet the frontal crash protection requirements of S5.1 by means that requires no action by vehicle occupants.

49 C.F.R. § 571.208 (1992 ed.).

Manufacturers had the option of certifying passenger cars with either an automatic seat belt or an airbag. The Department of Transportation permitted manufacturers to meet the automatic seat belt option requirement using belts that provided only upper torso restraint:[5]

S4.5.3 Automatic belts: Except as provided in S4.5.3.1, a seat belt assembly that requires no action by vehicle occupants (hereinafter referred to as an "automatic belt") may be used to meet the crash protection requirements of any option under S4 and in place of any seat belt assembly otherwise required by that option.

S4.5.3.2 An automatic belt, furnished pursuant to S4.5.3, that provides both pelvic and upper torso restraint may have either a detachable or nondetachable upper torso portion, notwithstanding provisions of the option under which it is furnished.

*Id.*

FMVSS 208 was viewed:

not as a minimum standard, but as a way to provide a manufacturer with a range of choices among different passive restraint systems that would be gradually introduced, thereby lowering costs, overcoming technical safety problems, encouraging technological development, and winning

---

5. Components other than a belt provided lower torso restraint.

widespread consumer acceptable—all of which would promote FMVSS 208's safety objectives.

*Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 862, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

### 3. The Saving Clause

 Regulation FMVSS 208, together with the Safety Act's express preemption provision, precludes States from setting safety standards that are not identical to the federal standard set forth in FMVSS 208. However, Section 1397(k) of the Safety Act establishes that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." *See Geier*, 529 U.S. at 895, 120 S.Ct. 1913. The presence of this saving clause "requires that the preemption provision be read narrowly to pre-empt only state statutes and regulations." *Id.* at 861, 120 S.Ct. 1913. The majority in *Geier* observed that:

> [w]ithout a saving clause, a broad reading of the express pre-emption provision arguably might pre-empt those actions . . . as applying to standards imposed in common-law tort actions, as well as standards contained in state legislation or regulations. And if so, it would pre-empt all nonidentical state standards established in tort actions covering the same aspect of performance as an applicable federal standard, even if the federal standard merely established a minimum standard. On that broad reading of the pre-emption clause little, if any, potential "liability at common law" would remain. . . . We have found no convincing indication that Congress wanted to pre-empt, not only state statutes and regulations, but also common-law tort actions, in such circumstances.

*Geier*, 529 U.S. at 868, 120 S.Ct. 1913.

 Importantly, scholars on basic conflict preemption principles inculcate in regard to the fundamental elixir of the rule when juxtaposing federal/state constitutional analysis. If a state statute, administrative rule, or common law cause of action conflicts with a federal statute, it is incontestable that the state law has no efficacy. It is pellucid that the Supremacy Clause does not bless unelected federal judges with carte blanche to utilize federal law as a conduit to impose their own

views of tort law on the States. Assumptively, we recognize that common law tort actions are historically within the scope of the States' police powers and are safe from preemption by a federal statute unless Congress reveals a clear and manifest purpose to preempt.

### 4. *Geier v. American Honda Motor Company*

The *Geier* court reasoned that the saving clause "at least" removed common law tort actions from the scope of the express preemption clause, but neither the saving clause nor the express preemption provision barred the ordinary working of conflict preemption principles. *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). The majority cautioned that "[n]othing in the language of the saving clause suggests an intent to save state-law tort actions that conflict with federal regulations." *Id.*

In *Geier*, a young man suffered injuries while driving a 1987 Honda Accord equipped with manual shoulder and lap belts but no driver's side airbag. 529 U.S. at 865, 120 S.Ct. 1913. Under FMVSS 208, Honda had the choice of whether or not to equip the 1987 Accord with an airbag. *Id.* Applying conflict preemption principles, the supreme court held plaintiffs' contention that the Accord should have been equipped with an airbag was preempted because the argument "stood as an obstacle to the accomplishment and execution of the important ... federal objectives [to promote safety by allowing manufacturers to install alternative protection systems]." 529 U.S. at 881, 120 S.Ct. 1913 (internal citations and quotations omitted). Thus, under *Geier*, a manufacturer's choice of restraint system cannot be challenged if it complies with the requirements under FMVSS 208.

Plaintiffs are not preempted from asserting a defect in the design or implementation of a chosen passive restraint system. *See King v. Ford Motor Co.*, 209 F.3d 886, 892 (2000). The *King* court emphasized that "compliance with performance criteria does not immunize manufacturers from common law liability arising from any defects in the production or design of their passive restraint systems." *Id.* (internal citations omitted) ("[T]he very federal safety statute upon which GM relies makes it abundantly clear that compliance with the regulations promulgated thereunder does not immu-

nize a manufacturer from common law liability." (citing 15 U.S.C. § 1397(c) (1976))).

In the instant case, Isaac sustained her injuries in a frontal, angular collision. Pursuant to FMVSS 208, the 1993 Escort had to "meet the frontal crash protection requirements [established by FMVSS 208] by means that require *no action* by vehicle occupants." 49 C.F.R. § 571.208 (1992 ed.) (emphasis added). Ford was required to provide a passive restraint system that secures passengers without the use of any manual elements. Ford chose to equip the 1993 Escort with a driver's side passive restraint system employing various components that worked collectively to protect the driver and complied with FMVSS 208. The components included: (1) an automatic, motorized shoulder belt; (2) a seat pan; (3) a knee bolster; and (4) an energy absorbing car body.

■ Based on the Safety Act, FMVSS 208, the saving clause, and *Geier*, Jamison was preempted from claiming the manual lap belt was defective in geometry or design. Notably a lap belt was not part of the *passive* restraint system chosen by Ford or required by the FMVSS; Ford included the manual lap belt in compliance with other federal regulations to protect occupants against lateral crashes and rollovers. As Jamison's trial counsel acknowledged in a pre-trial hearing: "[I]t's not going to make any difference ... whether you have a lap belt on or not because Ford depends on [other components] to restrain the lower torso" in collisions like the one in this case. Thus, allowing Jamison to challenge the geometry or design of the manual lap belt would be tantamount to allowing Jamison to argue Ford should have included a lap belt that effectively restrains the torso. Such an argument clearly challenges Ford's choice of occupant restraint systems and is preempted by *Geier*. The circuit court did not abuse its discretion in excluding Jamison's expert testimony regarding the manual lap belt. Moreover, the circuit court appropriately advised the jury about the irrelevance of the lap belt in the following instruction:

> [I]n this particular dispute ... the use, design or performance of a lap belt is not in question. It is not an issue and it's not to be considered by you in this. You will see it and

observe it [in various exhibits] but it has no significance in this dispute for your purposes or your consideration.

On appeal, Jamison suggests the jury was left to wonder about the role the lap belt played, or would have played, in protecting Isaac. Nevertheless, we determine the circuit court's instruction sufficiently informed the jury that the lap belt was not to be considered.

## B. Proximate Cause

As an additional basis for exclusion of evidence regarding Jamison's defective lap belt claim, Ford contends Jamison failed to establish any reliable proof that a lap belt design defect proximately caused Isaac's fatal injuries. Proximate cause requires proof of causation in fact and legal cause. *Bray v. Marathon Corp.*, 356 S.C. 111, 116–17, 588 S.E.2d 93, 95 (2003); *Trivelas v. S.C. Dep't of Transp.*, 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001). Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 463, 494 S.E.2d 835, 842 (Ct.App.1997). Legal cause is proved by establishing foreseeability. *Bray*, 356 S.C. at 117, 588 S.E.2d at 95; *Small*, 329 S.C. at 463, 494 S.E.2d at 842. The touchstone of proximate cause in South Carolina is foreseeability. *Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 443 S.E.2d 392 (1994); *Small*, 329 S.C. at 463, 494 S.E.2d at 842.

Ford advanced its contention that, because no reliable proof existed showing Isaac was wearing the lap belt in the 1993 Escort, any alleged defect in the lap belt design could not have proximately caused Isaac's injuries. Luculently, without evidence Isaac wore the lap belt, Jamison's defective lap belt claim even fails the 'but for' test for causation. However, the circuit court's exclusion of any evidence concerning a lap belt design defect was more clearly based on a preemption analysis under *Geier*, rather than on an analysis of proximate cause.

Notwithstanding the circuit court's rationale, this court is authorized to consider any sustaining ground pursuant to Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal.") and *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("The appellate

court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment."). Accordingly, we hereby encapsulate the entire reasoning and rationale in regard to proximate cause as an additional sustaining ground if per chance there is any issue as to the preservation of Ford's proximate cause argument.

## II. Crash Tests

■ The circuit court excluded video crash tests of a 1995 Escort that Jamison purported were substantially similar to the collision in this case and should have been admitted. Jamison complains the exclusion was error; we disagree.[6]

"The admission of evidence is within the sound discretion of the trial judge, and absent a clear abuse of discretion amounting to an error of law, the trial court's ruling will not be disturbed on appeal." *Vaught v. A.O. Hardee & Sons, Inc.*, 366 S.C. 475, 480, 623 S.E.2d 373, 375 (2005). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support. *Conner v. City of Forest Acres*, 363 S.C. 460, 467, 611 S.E.2d 905, 908 (2005). "To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., there is a reasonable probability the jury's verdict was influenced by the wrongly admitted or excluded evidence." *Id.*

■ Generally, in order for an out of court experiment to be admissible, the experiment must "be made under conditions and circumstances similar to those prevailing at the time of the occurrence involved in the controversy." *State v. Frazier*, 357 S.C. 161, 166, 592 S.E.2d 621, 623 (2004) (quoting *Weaks v. S.C. State Hwy. Dep't*, 250 S.C. 535, 542, 159 S.E.2d 234, 237 (1968)). "It is not required that the conditions be identical with those existing at the time of the controversy; it is sufficient if there is a substantial similarity." *Id.* (quoting *Weaks*, 250 S.C. at 542, 159 S.E.2d at 237).

---

6. Because of our disposition of this issue, we decline to address Ford's contention that Jamison waived this issue by failing to properly challenge the legal grounds on appeal.

Relevant evidence is evidence that tends to prove or disprove the existence of a material fact and is generally admissible. Rule 401, SCRE; Rule 402, SCRE. However, "[t]he dictates of Rule 401 are subject to the balancing requirement of Rule 403, SCRE, which requires a court to exclude relevant evidence upon a showing that its admission would be more prejudicial than probative." *Watson ex rel. Watson v. Chapman*, 343 S.C. 471, 478, 540 S.E.2d 484, 487 (Ct.App.2000). Under Rule 403, SCRE, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Moreover, "[a] trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances." *State v. Adams*, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct.App.2003) (citation omitted) (stating that under the abuse of discretion standard the reviewing court is "obligated to give great deference to the trial court's judgment").

Jamison sought to introduce the 1995 video crash tests to demonstrate the effect of impact on occupant kinematics. Admittedly, the excluded video illustrated a vehicle and collision substantially similar to the 1993 Escort and accident in this case. However, unlike the 1993 Escort, the vehicle in the excluded video was equipped with airbags that deployed upon impact. Ford maintained "[i]t cannot be said that the air bag going off into the face and the chest of the dummy does not affect the dummy's occupant kinematics." The circuit court observed that the 1995 video crash tests presented:

[o]ne of the rare occasions that I believe it covers just about every one that is mentioned in 403. Clearly the danger of an unfair prejudice is there. Confusion of the issue is clearly there. Misleading the jury is clearly there because it makes—there's no way for testimony to undo what's visual.

The jury's susceptibility to influences associated with viewing a crash test involving an airbag can reasonably be recognized as substantially outweighing the tests' probative value. We defer to the circuit court's judgment in this instance.

### III. Discovery Abuses

▮▮▮ Jamison challenges the circuit court's refusal to sanction Ford for alleged discovery abuses. We discern no error in the circuit court's ruling.

▮▮▮ Pursuant to Rule 37(b)(2)(C), SCRCP, when a party fails to obey an order to provide or permit discovery, the court may "make such orders in regard to the failure as are just," including an order dismissing the action or proceeding, or any part thereof. *Temple v. Tec–Fab, Inc.,* 370 S.C. 383, 390, 635 S.E.2d 541, 544 (Ct.App.2006) (citing *In re Anonymous Member of the S.C. Bar,* 346 S.C. 177, 194, 552 S.E.2d 10, 18 (2001)) ("[j]udges must use their authority to make sure that abusive deposition tactics and other forms of discovery abuse do not succeed in their ultimate goal: achieving success through abuse of the discovery rules rather than by the rule of law."). Generally, "the sanction should be aimed at the specific conduct of the party sanctioned and not go beyond the necessities of the situation to foreclose a decision on the merits of a case." *Griffin Grading & Clearing, Inc. v. Tire Serv. Equip. Mfg. Co., Inc.,* 334 S.C. 193, 198, 511 S.E.2d 716, 719 (Ct.App.1999).

▮▮▮ The imposition of sanctions is generally entrusted to the sound discretion of the trial court. *Halverson v. Yawn,* 328 S.C. 618, 620–21, 493 S.E.2d 883, 884 (Ct.App.1997); *Downey v. Dixon,* 294 S.C. 42, 46, 362 S.E.2d 317, 318 (Ct.App.1987). The circuit court's decision regarding the imposition of discovery sanctions will not be reversed absent an abuse of discretion. *Samples v. Mitchell,* 329 S.C. 105, 111, 495 S.E.2d 213, 216 (Ct.App.1997).

▮▮▮ "In deciding what sanction to impose for failure to disclose evidence during the discovery process, the trial court should weigh the nature of the interrogatories, the discovery posture of the case, willfulness, and the degree of prejudice." *Samples,* 329 S.C. at 112, 495 S.E.2d at 216. A failure to weigh the required factors demonstrates a failure to exercise discretion and amounts to an abuse of discretion. *Id.*

Here, the record indicates the circuit court considered the nature of the requests for production, the discovery posture of the case, Ford's lack of intent or willfulness, and the degree of prejudice Jamison suffered. During the pre-trial hearing, the

circuit court noted Jamison demonstrated no prejudice, Ford adhered to the continuing rule to supplement responses to production requests, and nothing suggested Ford knew about the evidence at issue. Moreover, the record fails to substantiate that Ford either knew about or possessed the evidence in question when initially responding to Jamison's discovery requests. In fact, Ford complied with the rules of discovery by confirming that Mazda possessed the evidence and forwarding Jamison's request to Mazda. Indeed, Jamison admitted all documents in question were originally produced by Mazda. Additionally, Ford satisfied the rule requiring continued supplementation of responses to interrogatories.

Jamison implored the court to sanction Ford by prohibiting reference to the 1993 Escort's compliance with federal regulations. The circuit court found no evidence Ford acted in bad faith with the willful disobedience or gross indifference required for a sanction that would be tantamount to default judgment. *See Griffin Grading & Clearing, Inc.,* 334 S.C. at 198–99, 511 S.E.2d at 719 ("Where the sanction would be tantamount to granting a judgment by default, the moving party must show bad faith, willful disobedience or gross indifference to its rights to justify the sanction."). Conclusively, the circuit court exercised sound discretion in refraining from the imposition of discovery abuse sanctions.

## IV. Rule 60(b), SCRCP, Motion

Jamison next argues the circuit erred in denying its Rule 60(b) motion for relief from judgment. Jamison contends the advertising brochure for the European Escort provided evidence of an existing alternative design and was material to its case. In addition, Jamison professes that the brochure provided a basis for sanctions against Ford for abuse of discovery. We disagree.

Generally, the decision to grant a new trial under Rule 60(b) lies within the sound discretion of the circuit court. *Raby Constr., L.L.P. v. Orr,* 358 S.C. 10, 17, 594 S.E.2d 478, 482 (2004). The appellate court will reverse a trial court's decision regarding the grant or denial of a Rule 60(b) motion only if it amounts to an abuse of discretion. *Id.* at 18, 594 S.E.2d at 482.

## A. Newly Discovered Evidence

The circuit court may relieve a party from a final judgment where "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 60(b)(2), SCRCP. "A party seeking to set aside a judgment pursuant to Rule 60(b) has the burden of presenting evidence entitling him to the requested relief." *Perry v. Heirs at Law of Gadsden*, 357 S.C. 42, 46, 590 S.E.2d 502, 504 (Ct.App.2003). To obtain a new trial based on newly discovered evidence, a movant must establish that the newly discovered evidence: (1) will probably change the result if a new trial is granted; (2) has been discovered since the trial; (3) could not have been discovered before the trial; (4) is material to the issue; and (5) is not merely cumulative or impeaching. *Lanier v. Lanier*, 364 S.C. 211, 217, 612 S.E.2d 456, 459 (Ct.App.2005) (citation omitted). Courts have found evidence is not newly discovered evidence for the purposes of Rule 60(b)(2) where the evidence was (1) known to the party at the time of trial, and (2) in the party's possession. *Id.* at 218, 612 S.E.2d at 459. In addition, Rule 60(b)(2) allows the court to grant a new trial only if the newly discovered evidence could not have been discovered by due diligence prior to trial. *Black's Law Dictionary* defines "due diligence" as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." 468 (7th ed. 1999). Furthermore, exclusion of testimony that would be merely cumulative or impeaching does not constitute error. *See Gamble v. International Paper Realty Corp. of South Carolina*, 323 S.C. 367, 474 S.E.2d 438 (1996) (ruling that where excluded testimony was merely cumulative there was no error).

In the case at bar, the circuit court ruled the brochure advertising the European Escort that Jamison advanced as newly discovered evidence would not likely change the result in a new trial and was merely cumulative. As a threshold requirement, before the brochure or any test regarding the European Escort could be admissible, Jamison had to demonstrate the European Escort was substantially similar to the 1993 Escort at issue. *See State v. Frazier*, 357 S.C. 161, 166, 592 S.E.2d 621, 623 (2004) (holding an out of court experiment

will only be admissible if proven to be substantially similar to the occurrence involved in the controversy). Jamison could not prove the European Escort was substantially similar to the 1993 Escort. Concomitantly, Ford provided an affidavit stating the vehicles differed significantly in structural design.

Jamison urged that the brochure constituted new evidence of a feasible alternative design—a critical and material element of its defective design claim. The circuit court noted, however, that Jamison had presented evidence of a feasible alternative design at trial. Jamison submitted a 1987 Volkswagen as an example of an effective passive restraint system with a seat pan that could successfully restrain the lower torso in an accident like the one in this case. Thus, the brochure, as evidence of a feasible alternative design, albeit one Ford employed, is merely cumulative of evidence introduced at trial. Jamison's potential use of the brochure for impeachment of Ford's witness does not support granting the Rule 60(b) motion. *See Lanier*, 364 S.C. at 217, 612 S.E.2d at 459.

### B. Fraud, Misrepresentation, or Other Misconduct

▆▆▆▆ Rule 60(b)(3), SCRCP authorizes the circuit court to relieve a party from a final judgment where the party demonstrates "fraud, misrepresentation, or other misconduct of an adverse party." In South Carolina, in order for a party to be entitled to relief based on fraud, the moving party must demonstrate extrinsic fraud. *Raby Constr., LLP v. Orr*, 358 S.C. 10, 20–21, 594 S.E.2d 478, 484 (2004); *Hagy v. Pruitt*, 339 S.C. 425, 431, 529 S.E.2d 714, 717 (2000) ("A judgment may be set aside on the ground of fraud only if the fraud is 'extrinsic' and not 'intrinsic.' "). Fraud is extrinsic when it is collateral to the issues tried in a case and effectively deprives the litigant of a fair hearing or the opportunity to present its case. *Id.* (citing *Hilton Head Ctr. of S.C., Inc. v. Pub. Serv., Comm'n of S.C.*, 294 S.C. 9, 362 S.E.2d 176 (1987); *Mr. G. v. Mrs. G.*, 320 S.C. 305, 465 S.E.2d 101 (Ct.App.1995)). "Relief is granted for extrinsic fraud on the theory that because the fraud prevented a party from fully exhibiting and trying his case, there has never been a real contest before the court on the subject matter of the action." *Chewning v. Ford Motor Co.*, 354 S.C. 72, 81, 579 S.E.2d 605, 610 (2003) (citing *Hilton Head*, 294 S.C. at 11, 362 S.E.2d at 177). On the other hand,

274

intrinsic fraud is fraud presented and considered at the trial. *Hagy*, 339 S.C. at 431–32, 529 S.E.2d at 718 (citing *Evans v. Gunter*, 366 S.E.2d 44, 294 S.C. 525 (Ct.App.1988)). Intrinsic fraud misleads a court in determining issues and induces the court to find for the party perpetrating the fraud. *Chewning*, 354 S.C. at 81, 579 S.E.2d at 610 (citing *Hilton Head*, 294 S.C. at 11, 362 S.E.2d at 177).

Jamison maintains Ford engaged in fraudulent conduct by withholding the brochure; consequently, the circuit court should grant relief from judgment. The record fails to substantiate Jamison's allegations that Ford intentionally withheld documents. Moreover, the assertion that a party failed to disclose documents generally amounts to intrinsic rather than extrinsic fraud. *Raby Constr.*, 358 S.C. at 19, 594 S.E.2d at 483.

Accordingly, Jamison was not entitled to a Rule 60(b) relief from judgment on either newly discovered evidence or fraud.

## CONCLUSION

We hold that the Safety Act, FMVSS 208, and *Geier* prohibit a state common law tort action based on the choice of design of a passive vehicle passenger restraint system. We rule that a state common tort action is permitted if bottomed and premised on defects in design and/or implementation of the chosen restraint system.

Finally, we place our imprimatur and approbation upon the arbitraments of the circuit court in regard to: (1) the exclusion of Jamison's expert testimony in reference to the manual lap belt; (2) the disallowance of video crash tests of the 1995 Escort with a driver side airbag; (3) the denial of Jamison's motion for sanctions; and (4) the rejection of Jamison's motion for relief from judgment.

Accordingly, the rulings and orders of the circuit court are **AFFIRMED.**

KITTREDGE and SHORT, JJ., concur.