689 S.E.2d 610

**The STATE, Respondent/Petitioner,**

v.

**John Boyd FRAZIER, Petitioner/Respondent.**

No. 26776.

Supreme Court of South Carolina.

Heard Nov. 17, 2009.

Decided Feb. 16, 2010.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, Solicitor John Gregory Hembree, of Conway, for Respondent/Petitioner.

Appellate Defender Katherine H. Hudgins, of Columbia, for Petitioner/Respondent.

Justice KITTREDGE.

John Boyd Frazier was convicted and sentenced for the offenses of murder, conspiracy to commit murder, and armed robbery.[1] The court of appeals affirmed Frazier's murder conviction, but held Frazier was entitled to a directed verdict on the armed robbery charge and reversed the conviction. *State v. Frazier*, 375 S.C. 575, 654 S.E.2d 280 (Ct.App.2007). We hold the trial court properly denied the motion for a directed verdict as to both charges, and reinstate the conviction and sentence for armed robbery. We, therefore, affirm in part and reverse in part.

## I.

Kimberly Renee (Renee) and Brent Poole were married. Renee, an exotic dancer, was having an affair with Frazier. The State's theory of the case was that Frazier and Renee conspired to murder Brent.[2]

---

1. This was Frazier's second trial. We reversed Frazier's first conviction as a result of the trial court's exclusion of certain expert evidence proffered by Frazier and the admission of testimony against Frazier. *State v. Frazier*, 357 S.C. 161, 592 S.E.2d 621 (2004).

2. Brent, Renee, and Frazier were all residents of Winston–Salem, North Carolina.

On the night of June 9, 1998, Brent was fatally shot twice in the head at close range as he and Renee were walking on the beach in Myrtle Beach. Renee was not injured and flagged down an officer patrolling the beach for help. She told the officer, "my husband has been shot."

The investigation quickly focused on Frazier. The State asserted that Renee lured Brent to Myrtle Beach with the pretense of celebrating their anniversary. Renee then convinced Brent to take a moonlight romantic stroll on the beach where Frazier was waiting to kill Brent. The State further alleged that Renee and Frazier staged the murder scene to appear as a robbery.

On June 11, North Carolina police interviewed Frazier at his Winston–Salem, North Carolina, home. Frazier admitted that he and Renee had an affair but claimed the affair had ended when Renee decided to return to her husband. Frazier denied any involvement in the murder.

Frazier admitted that he did not go to work on June 9, telling the officers he called in sick. Frazier made no mention of an email he sent to his employer a week prior to the murder requesting June 8, 9 and 10 off from work. Additionally, Frazier claimed he had not been to Myrtle Beach in many years. The police asked Frazier where his vehicle was and Frazier told them he had temporarily switched cars with his friend who was a mechanic so that the friend could fix a rattling noise in his car.

Police obtained and executed a search warrant for Frazier's home and found a day planner which had several notations indicating dates on which he had plans with Renee. Significantly, on June 9, the day planner had the notation "Renee and Brent." The evidence revealed that Renee and Frazier's affair continued after the date he told police it had ended.

The day following the crime, Mark and Donna Hobbs contacted the Myrtle Beach authorities. The Hobbses were visiting Myrtle Beach and learned of the murder from the media. On the night of the murder, at approximately midnight, the Hobbses observed a suspicious man in dark clothing outside of their hotel. The man looked at them and turned away and walked quickly to the beach. Although Donna was frightened, the couple walked towards the beach. They again spotted the man crouched behind the motel and made eye

contact with him. The man then proceeded to walk north, parallel to the beach. Brent was murdered shortly thereafter in the vicinity of where the Hobbses saw the suspicious man. Mark and Donna Hobbs separately identified Frazier as the suspicious man in a photographic lineup.

Frazier was indicted for murder, conspiracy to commit murder and armed robbery.[3]

At trial, the State presented witnesses who testified that Renee and Frazier had been having an ongoing affair and that Frazier's vehicle was often seen parked outside of the Poole home, including the Wednesday, Thursday, and Friday before the murder. Bruce Wolford, a friend of Frazier, and a bartender at the Silver Fox where Renee worked, testified Frazier tried to fight Brent on May 30 in the parking lot of the Silver Fox. Wolford also overheard Renee telling Frazier of her plans to go to Myrtle Beach with Brent on June 9. Kahle Schettler, the mechanic friend of Frazier, testified he let Frazier borrow his car on June 8 and Frazier returned the car on June 10. Schettler also testified Frazier called him after the police had questioned Frazier regarding the murder and told Schettler "it would be a great help to him and his attorney if [Schettler] knew if [the car had] a small amount of miles or not." Frazier's boss verified an email sent on June 2 to him from Frazier, in which Frazier requested June 8, 9, and 10 off from work. Frazier's boss testified that he gave Frazier permission to take those days off. Mark and Donna Hobbs testified and identified Frazier as the individual they saw lurking in the vicinity just prior to the murder.

The State also presented evidence that police found a wedding ring, a Swiss Army knife, cigarettes, and 39 cents near Brent's body at the murder scene. Additionally, police found $50.73 in cash and a sales receipt dated 10:34 p.m., June 9 from Fast Eddie's, a restaurant, in Brent's pockets. Renee and Brent had been at Fast Eddie's shortly before the murder. On July 5, nearly a month after the murder, Brent's

---

3. Renee was indicted for the offenses of murder and conspiracy. Renee and Frazier were tried separately. Renee gave a statement to police that "she and Frazier planned her husband's murder." *State v. Poole,* 2002–UP–029 (S.C. Ct.App. filed January 16, 2002). Renee was convicted and sentenced to life imprisonment. Renee's confession has no impact on the matters before us.

wallet was found in the yard of a residence several blocks from the crime scene. The wallet was soaking wet and contained $9 in cash, Brent's driver's license, and the ATM card which had been used to pay the bill at Fast Eddie's.

The jury found Frazier guilty on all counts. The court of appeals held the trial court properly denied Frazier's motion for a directed verdict on the murder charge and affirmed the conviction. However, the court of appeals found the evidence did not rise above the level of mere suspicion that Frazier committed an armed robbery and reversed the conviction. We granted both Frazier's and the State's petitions for a writ of certiorari.

## II.

If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury. *State v. Weston,* 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006). When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State. *Id.* The trial judge should grant a directed verdict when the evidence merely raises a suspicion that the accused is guilty. *State v. Hernandez,* 382 S.C. 620, 624, 677 S.E.2d 603, 605 (2009).

## III.

### Murder

Frazier argues the court of appeals erred in affirming the trial court's denial of his motion for a directed verdict because the State failed to present evidence placing him at the murder scene. We disagree.

We hold the State presented substantial circumstantial evidence of guilt, including: Frazier and Renee's ongoing affair; Brent was shot twice at point-blank range, yet Renee was unharmed; Wolford overheard Renee and Frazier discussing the trip to Myrtle Beach; Frazier requested June 8, 9 and 10 off from work a week prior to the date of the murder (although Frazier told police he had not been to work on the date of the murder because he was sick); Frazier borrowed Schettler's car from June 8–10; Frazier tried to fight Brent

days before the murder; and the Hobbses observed Frazier lurking around the murder scene just before the murder was committed and both independently identified Frazier in a photographic lineup. This evidence, when viewed collectively, presented a jury question as to Frazier's guilt.

Frazier cites to *State v. Arnold*, 361 S.C. 386, 605 S.E.2d 529 (2004), *State v. Martin*, 340 S.C. 597, 533 S.E.2d 572 (2000), and *State v. Schrock*, 283 S.C. 129, 322 S.E.2d 450 (1984) for the proposition that the trial court must grant a directed verdict if the State fails to present evidence placing the defendant at the scene of the crime. In our view, Frazier overstates the holdings in these cases. In *Arnold, Martin*, and *Schrock* we held that the State did not produce substantial circumstantial evidence of the defendant's guilt and noted that the State presented *no* evidence that the defendant was at the scene. We reject any interpretation that these cases altered or increased the sufficiency of evidence standard a trial court is to apply in a case based on circumstantial evidence. In this case, unlike *Arnold, Martin*, and *Schrock*, the State offered substantial circumstantial evidence of Frazier's guilt. We agree with the court of appeals that Frazier's directed verdict motion on the murder charge was properly denied.

### Armed Robbery

■ The State contends the court of appeals erred in reversing Frazier's conviction for armed robbery. We agree.

■ Armed robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear. *State v. Gourdine*, 322 S.C. 396, 398, 472 S.E.2d 241, 241 (1996). Robbery is the crime of larceny accomplished with force, and armed robbery occurs when a person commits robbery while armed with a deadly weapon. *State v. Keith*, 283 S.C. 597, 598, 325 S.E.2d 325, 325–26 (1985); S.C.Code Ann. § 16–11–330(a) (2008).

■ A court is not required to analyze an armed robbery and a homicide as two completely independent events. A defendant may be found guilty of armed robbery in conjunction with a homicide if the death and the robbery are a part of a continuous chain of events so interconnected as to be inseparable. *See* 77 C.J.S. Robbery § 9 (1994) ("Although, as

an abstract principle of law, one ordinarily cannot be guilty of robbery if the victim is a deceased person, this principle does not apply where a robbery and homicide are a part of the same transaction and are so interwoven with each other as to be inseparable.").

We hold substantial circumstantial evidence exists to support the armed robbery charge. The State submitted evidence that Brent's wallet was found a month after the murder in a yard blocks from the murder scene, a receipt found in Brent's pocket showed that Brent used his ATM card the night of the murder, and the ATM card was found in the wallet. Additionally, a Swiss Army knife, a cigarette pack, coins, and a gold ring were all found near Brent's body.

The totality of the evidence, viewed as a whole, establishes substantial circumstantial evidence of the elements of armed robbery. Specifically, the evidence supports a reasonable inference that the wallet was on Brent just prior to his death and that the gun was used during the incident, establishing the elements of force and use of a deadly weapon. In addition, we find that the items found around Brent also support an inference that a robbery had taken place. Furthermore, the evidence shows that the homicide and robbery were a part of a continuous, inseparable chain of events. In sum, the State presented substantial circumstantial evidence that the murderer committed an armed robbery, and, as explained above, that Frazier was the murderer. *See State v. Douglas*, 359 S.C. 187, 205, 597 S.E.2d 1, 10 (Ct.App.2004) (overruled on other grounds by *State v. Douglas*, 369 S.C. 424, 632 S.E.2d 845 (2006)) (holding the State presented substantial circumstantial evidence that the murder and the taking of the property were part of a "single transaction or continuous sequence of events" where the victim had been shot five times, his house was ransacked, and his wallet was missing). We sustain the armed robbery conviction well aware that the taking and carrying away of Brent's wallet was intended to mislead police as to real the motive for the murder.

## IV.

We hold the trial court properly denied Frazier's motion for a directed verdict on the murder charge and the armed robbery charge. Accordingly, we reverse in part and affirm in part the opinion of the court of appeals.

534

TOAL, C.J., and WALLER, J., concur.

BEATTY, J., concurring in part and dissenting in part in a separate opinion in which PLEICONES, J., concurs.

Justice BEATTY (concurring in part and dissenting in part).

I concur in part and dissent in part. I concur with the majority in affirming the Court of Appeals' upholding of Frazier's conviction for murder. However, I dissent in the majority's decision to reverse the Court of Appeals as to the armed robbery conviction.

In my view, the Court of Appeals was correct in reversing the armed robbery conviction. There is no evidence that a robbery took place, or that if it did that the defendant committed it. At best, the evidence in this case merely raises a weak suspicion that a robbery occurred.

The evidence showed that: the victim's gold ring was found near his body; victim had fifty dollars in his pocket; victim's wallet was found with its contents intact weeks later, in a location blocks away from the murder scene; there is no evidence that the victim had the wallet at the time of the murder; and there is no evidence that anything was taken from the victim.

I would dismiss certiorari as improvidently granted.

PLEICONES, J., concurs.